# McCone v. Thorpe

United States Court of Appeals for the Eleventh Circuit

October 29, 2020, Decided

No. 20-11949 Non-Argument Calendar

**Reporter**

828 Fed. Appx. 697 *; 2020 U.S. App. LEXIS 34197 **; 2020 WL 6342705

HENRY L. MCCONE, Plaintiff-Appellant, versus JANET C. THORPE, individually and in her official capacities, Defendant-Appellee.

**Notice:** PLEASE REFER TO FEDERAL RULES OF APPELLATE PROCEDURE RULE 32.1 GOVERNING THE CITATION TO UNPUBLISHED OPINIONS.

**Prior History:** [**1] Appeal from the United States District Court for the Middle District of Florida. D.C. Docket No. 6:19-cv-00883-CEM-GJK.

McCone v. Thorpe, 2020 U.S. Dist. LEXIS 51610, 2020 WL 1444032 (M.D. Fla., Mar. 25, 2020)

**Counsel:** HENRY L. MCCONE, Plaintiff-Appellant, Pro se, ORLANDO, FL.

For JANET C. THORPE, individually and in her official capacities, Defendant-Appellee: David Charles Asti, Office of the Attorney General, TAMPA, FL; Ashley Moody, Attorney General's Office, ORLANDO, FL.

**Judges:** Before WILLIAM PRYOR, Chief Judge, NEWSOM and ANDERSON, Circuit Judges.

## Opinion

 [*697]  PER CURIAM:

Henry L. McCone appeals the dismissal of his complaint against the Honorable Janet Thorpe of the Ninth Judicial Circuit of Orange County, Florida. 42 U.S.C. § 1983. McCone complained that Judge Thorpe's conduct during a pretrial hearing and her decisions to stay his civil action pending his appeal and later refusal to lift the stay violated his rights of access to the courts and to due process under the U.S. Constitution and the Florida Constitution. McCone sought a judgment declaring the judge's actions unconstitutional and enjoining the judge from "engaging in such unconstitutional and unlawful acts" and compelling her "to develop policies and procedures for preventing the recurrence of any such unconstitutional and unlawful acts." The district [**2] court dismissed McCone's request for declaratory relief based on absolute judicial immunity and his request for injunctive relief for failure to state a claim. McCone filed a motion to alter or to reconsider the judgment, which the district court denied. Fed. R. Civ. P. 59(e), 60(b). We affirm.

McCone waived his right to challenge the dismissal of his request for declaratory relief. As the district court stated in its order of dismissal, when a party fails to object to the findings or recommendations in a magistrate judge's report, he "waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object." 11th Cir. R. 3-1. McCone objected to the magistrate judge's report only on the ground that judicial immunity did not apply to his request for prospective equitable relief. So McCone waived any challenge he could have made to the determinations that all Judge Thorpe's acts about which McCone complained were judicial  [*698]  functions performed in his civil case, *see*

*Bolin v. Story*, 225 F.3d 1234, 1239 (11th Cir. 2000), and that judicial immunity barred his request for retrospective equitable relief—that is, a judgment declaring [**3] that the judge's earlier actions violated federal and state law, *see Summit Med. Assocs., P.C. v. Pryor*, 180 F.3d 1326, 1336-37 (11th Cir. 1999).

The district court correctly dismissed McCone's request for prospective injunctive relief. "A judge enjoys absolute immunity from suit for judicial acts performed within the jurisdiction of h[er] court," *McCullough v. Finley*, 907 F.3d 1324, 1330 (11th Cir. 2018), "regardless of whether [s]he made a mistake, acted maliciously, or exceeded h[er] authority," *id.* at 1331. Immunity applies to most suits brought for injunctive relief for "an act or omission taken in [a judicial] officer's judicial capacity." 42 U.S.C. § 1983. Section 1983 states that "injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." *Id.* McCone alleged no facts entitling him to an injunction because, in the words of the district court, he did not allege that "Judge Thorpe . . . violated a declaratory degree []or . . . that declaratory relief is unavailable to him." Moreover, as the district court mentioned, McCone had an adequate remedy at law. The state court had lifted the stay in his case, and he could appeal any decision or challenge it in a petition for an extraordinary writ.

McCone argues that the district court erred by failing to treat Judge Thorpe's motion to dismiss as [**4] a motion for summary judgment because she attached a copy of the state court docket to her filing, but we disagree. A district court may take judicial notice of public records without converting a motion to dismiss into a motion for summary judgment. *See* Fed. R. Evid. 201(b); *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1278-80 (11th Cir. 1999).

The district court also did not abuse its discretion when it denied McCone's post-judgment motion.

McCone identified no new evidence or manifest error in the ruling that required the district court to alter or to reconsider its judgment. *See* Fed. R. Civ. P. 59(e), 60(b); *Arthur v. King*, 500 F.3d 1335, 1343 (11th Cir. 2007). His motion consisted of arguments concerning the merits of his action in the state court and his request for injunctive relief. *See Michael Linet, Inc. v. Vill. of Wellington*, 408 F.3d 757, 763 (11th Cir. 2005) (explaining that a motion for reconsideration cannot be used "to relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgment").

We **AFFIRM** the dismissal of McCone's complaint.

---

**End of Document**

# Hunt v. Ga. Dep't of Cmty. Affairs

United States Court of Appeals for the Eleventh Circuit

September 18, 2012, Decided

No. 12-10935 Non-Argument Calendar

**Reporter**

490 Fed. Appx. 196 *; 2012 U.S. App. LEXIS 19535 **; 2012 WL 4074568

BONITA HUNT, Plaintiff-Appellant, versus GEORGIA DEPARTMENT OF COMMUNITY AFFAIRS, LARUTH HOLLOWAY, SABRA LEBLANC, GEOFFREY PARKER, JIM BALINGER, MICHAEL TIMMS, for the Georgia Department of Community Affairs, in their official and individual capacity, Defendants-Appellees.

**Notice:** PLEASE REFER TO FEDERAL RULES OF APPELLATE PROCEDURE RULE 32.1 GOVERNING THE CITATION TO UNPUBLISHED OPINIONS.

**Prior History:** [**1] Appeal from the United States District Court for the Northern District of Georgia. D.C. Docket No. 1:09-cv-03137-AT.

Hunt v. Ga. Dep't of Cmty. Affairs, 2010 U.S. Dist. LEXIS 136444 (N.D. Ga., Dec. 23, 2010)

**Disposition:** AFFIRMED.

**Counsel:** For BONITA HUNT, Plaintiff - Appellant: Bonita Hunt, EAST POINT, GA.

For GEORGIA DEPARTMENT OF COMMUNITY AFFAIRS, LARUTH HOLLOWAY, SABRA LEBLANC, JIM BALINGER, MICHAEL TIMMS, for the Georgia Department of Community Affairs, in their official and individual capacity, Defendant - Appellees: Keilani Kimes-Parker, Laura Louise Lones, Samuel Scott Olens, Attorney General's Office, ATLANTA, GA.

For GEOFFREY PARKER, Defendant - Appellee: Laura Louise Lones, Attorney General's Office, ATLANTA, GA.

**Judges:** Before CARNES, HULL and MARCUS, Circuit Judges.

## Opinion

 [*197]  PER CURIAM:

Plaintiff-Appellant Bonita Hunt <u>pro se</u> appeals the district court's dismissal of her complaint asserting claims against the Defendant-Appellee Georgia Department of Community Affairs ("GDCA") under the Fair Housing Act ("FHA"), the Americans with Disabilities Act ("ADA"), and the Rehabilitation Act. The district[1] court dismissed Hunt's ADA and Rehabilitation Act claims as barred by the two-year statute of limitations and dismissed her FHA claim as barred by the Eleventh Amendment. After review, we affirm.[2]

---

[1] On appeal, Hunt [**2] does not challenge the district court's dismissal of her claims against the individual defendants. Consequently, those claims are deemed abandoned. See Bingham v. Thomas, 654 F.3d 1171, 1174 n.1 (11th Cir. 2011).

[2] We review <u>de novo</u> a district court's grant of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), accepting the allegations in the complaint as true and construing them in the light most favorable to the plaintiff. Am. Dental Ass'n v. Cigna Corp., 605 F.3d 1283, 1288 (11th Cir. 2010). In addition, we liberally construe <u>pro se</u> pleadings. Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998). To avoid dismissal under Rule 12(b)(6), the facts alleged in the complaint must state a claim for relief "that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662,678-79, 129 S. Ct. 1937, 1949-50, 173 L. Ed. 2d 868, (2009). When considering a Rule 12(b)(6) motion, the court is limited to the pleadings and attached exhibits. Grossman v. Nationsbank, N.A., 225 F.3d 1228, 1231 (11th Cir. 2000); see Fed. R. Civ. P. 10(c).

## I. BACKGROUND

From 2004 to 2007, Hunt received a federal housing subsidy administered by Defendant GDCA. According to Plaintiff Hunt's pro se complaint, filed [**3] on October 20, 2009, Defendant GDCA discriminated against her and her children based on their race, their familial status and her son's disabilities by: (1) forcing them to remain in substandard housing that was infested by mold and rats and smelled of raw sewage until Hunt's lease expired on November 30, 2005; (2) refusing to give approval in May 2007 so that a live-in aide for Hunt's son could reside in Hunt's subsidized home; and (3) retaliating against Hunt, for her complaints, by making false allegations of fraud against her in a June 14, 2007 administrative hearing with the U.S. Department of Housing and Urban Development ("HUD").

## II. DISCUSSION

Title II of the ADA and the Rehabilitation Act do not contain independent statutes of limitation and thus are governed by the most analogous state statute of limitations, here Georgia's two-year statute of limitations for personal injury actions in O.C.G.A. § 9-3-33. Everett v. Cobb Cnty. Sch. Dist., 138 F.3d 1407, 1409-10 (11th Cir. 1998). On appeal, Hunt does not dispute that the last act of alleged discrimination occurred in May 2007 and that she [*198] filed her federal complaint in October 2009, more than two years later. Instead, Hunt argues [**4] that her complaint was nonetheless timely because she is entitled to either statutory tolling under the FHA or equitable tolling. We disagree.[3]

_____

[3] We review de novo a district court's application of a statute of limitation and its determination whether equitable tolling applies. McCullough v. United States, 607 F.3d 1355, 1358 (11th Cir. 2010); Bhd. of Locomotive Eng'rs & Trainmen Gen. Comm. of Adjustment CSX Transp. N. Lines v. CSX Transp., Inc., 522 F.3d 1190, 1194 (11th Cir. 2008). "A Rule 12(b)(6) dismissal on statute of limitations

Although the FHA contains a statutory tolling provision, see 42 U.S.C. § 3613(a)(1)(B), Hunt cites no authority for her contention that it extends to claims raised under the ADA or the Rehabilitation Act. Further, nothing in the FHA purports to toll the running of the limitations period for a claim under the ADA or the Rehabilitation Act. Rather, the FHA's tolling provision expressly limits its reach to administrative proceedings concerning discriminatory housing practices made unlawful by [**5] the Act itself. See 42 U.S.C. § 3602(f) (defining a "discriminatory housing practice" as "an act that is unlawful under" four specified provisions of the FHA), § 3613(a)(1)(A), (B) (authorizing an aggrieved person to commence a civil action "not later than 2 years after the occurrence or the termination of an alleged discriminatory housing practice" and tolling the two-year period while "an administrative proceeding under this subchapter was pending with respect to a complaint or charge under this subchapter based upon such discriminatory housing practice"). Moreover, since the source of the limitation for FHA claims is distinct from that governing ADA and Rehabilitation Act claims, we see no reason to conclude that the FHA's express tolling provision should apply to an ADA or a Rehabilitation Act claim.

Hunt alternatively argues that the limitations period for her ADA and Rehabilitation Act claims was equitably tolled during the administrative proceedings because HUD led her to believe that it had jurisdiction of those claims and that the FHA's statutory tolling provision applied to them. "The doctrine of equitable tolling allows a court to toll the statute of limitations until such [**6] a time that the court determines would have been fair for the statute of limitations to begin running on the plaintiff's claims." Arce v. Garcia, 434 F.3d 1254, 1261 (11th Cir. 2006). Because equitable tolling is

_____

grounds is appropriate only if it is apparent from the face of the complaint that the claim is time-barred." CSX Transp., 522 F.3d at 1194 (quotation marks omitted).

an extraordinary remedy to be applied sparingly, it is appropriate only when a plaintiff untimely files due to extraordinary circumstances that are both beyond her control and unavoidable even with diligence. Id. Equitable tolling typically requires some affirmative misconduct, such as fraud, misinformation or deliberate concealment. Jackson v. Astrue, 506 F.3d 1349, 1355-56 (11th Cir. 2007). "[I]gnorance of the law does not, on its own, satisfy the constricted 'extraordinary circumstances' test." Id. at 1356. Accordingly, we have previously rejected the contention that pro se status, ignorance of the judicial process or slow administrative proceedings warrant application of equitable tolling. See Wakefield v. R.R. Ret. Bd., 131 F.3d 967, 969-70 (11th Cir. 1997).

Here, the district court did not err in concluding that Hunt failed to show extraordinary circumstances justifying equitable tolling. Contrary to Hunt's suggestion, nothing in the pleadings indicate HUD misled her [**7] into allowing the statute of limitations for her ADA and Rehabilitation [*199] Act claims to expire. Although HUD informed Hunt that it had jurisdiction to enforce administratively the ADA and Rehabilitation Act claims in addition to the FHA claim, its statements regarding the limitations period and tolling during the administrative process were specific to those claims raised under the FHA. Specifically, in its September 11, 2009 letter to Hunt, HUD merely indicated that claims under the FHA for discriminatory housing practices were governed by a two-year statute of limitations and that the two-year period governing such claims did not include the time during which administrative proceedings were pending. HUD's letter was silent as to the limitations period governing claims under the ADA or the Rehabilitation Act and in no way suggested that the statute of limitations for those claims was also tolled during the administrative proceedings.

Furthermore, the FHA explicitly states that an aggrieved person may commence a civil action for discriminatory housing practices regardless of whether an administrative complaint has been filed and without regard to the status of such a complaint. See [**8] 42 U.S.C. § 613(a)(2). Thus, HUD's investigation into Hunt's complaint, even if delayed, did not prevent her from timely pursuing even her FHA claim, much less her ADA and Rehabilitation Act claims, in federal court. The fact that Hunt may have been ignorant of the relevant law, including her right to forgo the administrative process, does not constitute the type of extraordinary circumstances needed to justify equitable tolling. Accordingly, the district court did not err in dismissing Hunt's ADA and Rehabilitation Act claims against GDCA as barred by the statute of limitations.

Hunt's appellate brief asserts in one sentence that the district court erred in dismissing her FHA claim as barred by the Eleventh Amendment because the GDCA waived immunity by receiving federal funds. Hunt does not cite to any statute or authority to support her contention or provide any legal analysis of this waiver issue. While we read briefs filed by pro se litigants liberally, issues not briefed on appeal by a pro se litigant are deemed abandoned. Timson v. Sampson, 518 F.3d 870, 874 (11th Cir. 2008). "On appeal, we require appellants to not only state their contentions to us, but also to give 'the reasons [**9] for them, with citations to the authorities and parts of the record on which the appellant relies.'" Doe v. Moore, 410 F.3d 1337, 1349 n.10 (11th Cir. 2005) (quoting Federal Rule of Appellate Procedure 28(a)(9)(A)). Hunt's bald assertion, without any substantive legal argument, does not adequately preserve this issue for appellate review.

For all these reasons, we affirm the district court's dismissal of Hunt's complaint. Hunt's motion for oral argument is denied.

**AFFIRMED**.

**End of Document**

# Kennedy v. South Univ.

United States District Court for the Southern District of Georgia, Savannah Division

March 3, 2022, Decided; March 3, 2022, Filed

CIVIL ACTION NO.: 4:21-cv-172

**Reporter**

2022 U.S. Dist. LEXIS 37756 *; 2022 WL 628541

AMANDA KENNEDY, Plaintiff, v. SOUTH UNIVERSITY, Defendant.

**Counsel:** [*1] For Amanda Kennedy, Plaintiff: Joseph J. Steffen, Jr., LEAD ATTORNEY, Joseph J. Steffen, Jr., Attorney at Law, Savannah, GA.

For South University, Defendant: Sarah H. Lamar, LEAD ATTORNEY, Wade Wilkes Herring, II, Hunter Maclean, Exley & Dunn, P.C., Savannah, GA.

**Judges:** R. STAN BAKER, UNITED STATES DISTRICT JUDGE.

**Opinion by:** R. STAN BAKER

# Opinion

## ORDER

This action arises out of the disability discrimination Plaintiff Amanda Kennedy allegedly suffered while attending Defendant South University as a pharmacy student. (Doc. 1 (original Complaint); doc. 9 (Amended Complaint).) Plaintiff initiated this lawsuit on June 8, 2021, alleging that Defendant violated the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 et seq., ("ADA"), and Section 504 of the Rehabilitation Act, 29 U.S.C. § 701 et seq. (See docs. 1, 9.) Presently before the Court is Defendant's Motion to Dismiss the Amended Complaint, in which Defendant argues that the applicable statute of limitations bars Plaintiff's claims. (See doc. 13.) The Motion is fully briefed

by the parties. (Docs. 15, 17, 18-1, 23.) For the following reasons, the Court **GRANTS in part** and **DENIES in part** Defendant's Motion to Dismiss the Amended Complaint. (Doc. 13.)

## BACKGROUND

### I. Factual Allegations

According to the Amended Complaint, Plaintiff Amanda Kennedy became a pharmacy student at Defendant South [*2] University (the "University") on June 6, 2016. (Doc. 9, p. 2.) Plaintiff suffers from attention deficit hyperactivity disorder ("ADHD"). (Id.) The University knew about Plaintiff's ADHD diagnosis and agreed to certain academic accommodations.[1] (See id. at pp. 2-3.) In August 2018, Plaintiff entered the third year of her degree program (referred to as "Advanced Pharmacy Practice Experiences" ("APPE")). (Id. at p. 3.) APPE required Plaintiff to complete forty hours of clinical work. (Id.) Dr. James W. Fetterman was the clinical supervisor of APPE, meaning that he was responsible for clinical assignments and rotations and enforcing Plaintiff's "approved ADA accommodations." (Id.) Plaintiff was placed in the Ambulatory Care Rotation unit at the Veterans Administration Hospital under Dr. Edward Kowalewski's supervision. (Id.) The Ambulatory Care Unit required Plaintiff to work

---

[1] The University allegedly agreed to the following accommodations: "[a]ll exams to be administered in the morning, and prior to clinical work duties; time-and-a-half for written and laboratory exams; exams to be administered in a quiet, private setting; with an easily visible clock; and computerized tests." (Doc. 9, p. 3.)

"long clinical hours alone" and to work "additional hours," allegedly in violation of her ADA accommodations. (Id.)

On October 14, 2018, Plaintiff emailed Dr. Fetterman and Dean Gabriella Fischer, requesting a transfer from the Ambulatory Care Unit to a rotation with "reduced clinical hours" that "allowed her time to [*3] study and prepare for exams." (Id. at p. 4.) Dean Fischer and Dr. Fetterman ignored this request. (Id.) On October 18, 2018, Plaintiff again emailed Dr. Fetterman to request a transfer to a rotation that satisfied her ADA accommodations. (Id.) Dr. Fetterman ignored this request as well. (Id.) On November 16, 2018, Plaintiff took a midterm exam for Dr. Kowalewski that allegedly did not comply with her ADA accommodations. (Id.) Dr. Kowalewski neither properly graded Plaintiff's exam nor, at that time, computed her overall course grade. (Id.) On December 7, 2018, Plaintiff took a final exam administered by Dr. Kowalewski. (Id. at p. 5.) Dr. Kowalewski again did not properly grade Plaintiff's final exam, and he did not compute her overall course grade. (Id.) One week later, on December 14, 2018, despite receiving no notice that she was in danger of failing APPE, Plaintiff received a failing grade in the course based on her midterm and final exam grades. (Id.)

On January 3, 2019, Plaintiff complained to "Dr. Jones" about the "discriminatory treatment [she] received . . . during her clinical rotation with Dr. Kowalewski" and appealed her failing grade.[2] (Id.) On February 4, 2019, Dean Shelly [*4] Fichau, the Dean of Student Affairs, wrote Plaintiff a letter informing Plaintiff that her "academic accommodations transfer [sic] over to APPE rotations," but on February 8, 2019, Dean Fischer emailed Plaintiff indicating that "academic accommodations do not apply to workplace settings[,] which APPEs are." (Id. (internal

quotations omitted).) Furthermore, Dean Fichau's letter informed Plaintiff about the "outcome of her grievance of discrimination" and told her that she had the right to appeal the decision. (Id.) Plaintiff reviewed her APPE final exam on March 1, 2019, and, along with "Dean May," discovered "numerous inconsistencies and errors in the grading of her final exam."[3] (Id. at p. 6.) On March 4, 2019, "Dean Jones" notified Plaintiff that she was released from her degree program and that she was not to return to clinical rotations.[4] (Id.) By March 16, 2019, Plaintiff's grade and grading rubric for her "rotation with Dr. Jones" were no longer available on the "Pharmac[a]demic system."[5] (Id.) Plaintiff subsequently met with President Tranchini on March 19, 2019, to appeal her grade and academic dismissal.[6] (Id. at p. 7.) During that meeting, Plaintiff was told that if she tried [*5] to present "the appeal letter from her backpack," then "they would call the police and have her arrested." (Id.) On April 16, 2019, and May 20, 2019, Plaintiff contacted Melissa Jusino, her advisor at the University, regarding her grades, but Jusino never responded. (Id.)

At some point in March 2020, Plaintiff realized that her grades and certifications were removed from her "student profile." (Id.) In May 2021, Plaintiff's "case manager for her Office of Civil Rights case reached out to South University . . . to inquire about the removal of grades." (Id.) The University responded that it had upheld Plaintiff's dismissal, even though Plaintiff was never able to file an

---

[2] The Amended Complaint does not provide Dr. Jones's full name or specify his or her relationship with the University. (See doc. 9.)

[3] The Amended Complaint does not provide Dean May's full name or specify his or her exact relationship with the University. (See doc. 9.)

[4] Presumably, "Dean Jones" and "Dr. Jones" are the same person, but the Amended Complaint is not clear on this point. (See doc. 9.)

[5] It is not clear from the Amended Complaint whether the "rotation with Dr. Jones" is the VA Hospital rotation for which Dr. Kowalewski gave Plaintiff a failing grade.

[6] The Amended Complaint failed to provide President Tranchini's full name or clarify his or her exact relationship with the University. (See doc. 9.)

appeal.[7] (Id.)

## II. Procedural History

Plaintiff filed this suit on June 8, 2021, asserting unlawful termination and retaliation claims under the ADA. (See doc. 1.) The University filed a Motion to Dismiss the original Complaint, arguing that Plaintiff's ADA claims are time barred. (See doc. 5.) Plaintiff then filed the Amended Complaint, asserting unlawful termination, retaliation, and failure to accommodate claims under the ADA and Section 504 of the Rehabilitation Act.[8] (See doc. 9.) [*6] The

University subsequently filed the at-issue Motion to Dismiss the Amended Complaint, once again arguing that all of Plaintiff's claims are time-barred. (See doc. 13.) The parties have fully briefed the Motion. (See docs. 15, 17, 18-1, 23.)

## STANDARD OF REVIEW

When evaluating a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must "accept[] the allegations in the complaint as true and constru[e] them in the light most favorable to the plaintiff." Belanger v. Salvation Army, 556 F.3d 1153, 1155 (11th Cir. 2009). However, this tenet "is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). Rather, "[a] complaint must state a facially plausible claim for relief, and '[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Reese v. Ellis, Painter, Ratterree & Adams, LLP, 678 F.3d 1211, 1215 (11th Cir. 2012) (internal quotations omitted) (quoting Iqbal, 556 U.S. at 678). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" does not suffice. Iqbal, 556 U.S. at 678 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S.

---

[7] In her Response, Plaintiff appears to add factual allegations that are not contained within the Amended Complaint. For example, the Response states that "in 2021, [Plaintiff] attempted to re-apply to the program as is now timely and warranted to her under South University Policy. Retaliatorily, her application has not been reviewed or processed and, in fact, through defense counsel she has been warned not to contact South University." (Doc. 15, p. 6.) The Response then states, "This is particularly damaging to her since South [University] is the only institution where she can complete her course of study." (Id.) However, "[c]onsideration of matters beyond the complaint is improper in the context of a motion to dismiss." Milburn v. United States, 734 F.2d 762, 765 (11th Cir. 1984). Thus, the Court declines to consider these added factual allegations from the Response. See, e.g., Boyd v. Daniels, No. 2:13-cv-354-MEF, 2014 U.S. Dist. LEXIS 43904, 2014 WL 1245885, at *8 n.5 (M.D. Ala. Mar. 24, 2014) ("Factual allegations newly introduced in Boyd's brief cannot be considered for purposes of a motion to dismiss.") (citing Milburn, 734 F.2d at 765); Brown v. J.P. Turner & Co., No. 1:09-CV-2649-JEC, 2011 U.S. Dist. LEXIS 53118, 2011 WL 1882522, at *5 (N.D. Ga. May 17, 2011) ("In an attempt to bolster their negligence claim, plaintiffs impermissibly seek to raise the new argument that defendant contracted with plaintiffs to receive a fee in exchange for performing due diligence. Such an allegation, made for the first time in response to a motion to dismiss, is plainly inappropriate.") (citing Milburn, 734 F.2d at 765).

[8] Under black letter federal law, "an amended complaint supersedes the initial complaint and becomes the operative pleading in the case." Lowery v. Ala. Power Co., 483 F.3d 1184, 1219 (11th Cir. 2007). This means that "the original pleading is abandoned by the amendment[] and is no longer a part of the pleader's averments against his adversary." Dresdner Bank AG v. M/V Olympia Voyager, 463 F.3d 1210, 1215 (11th Cir. 2006); see also Hoefling v. City of Miami, 811 F.3d 1271, 1277 (11th Cir. 2016) (initial pleading "bec[o]me[s] a legal nullity"). To be sure, an original complaint would still have legal effect if "the amendment

specifically refers to or adopts the earlier pleading." Varnes v. Local 91, Glass Bottle Blowers Ass'n, 674 F.2d 1365, 1370 n.6 (11th Cir. 1982). An amended complaint that does not incorporate the prior pleading, however, moots "the motion to dismiss the original complaint because the motion seeks to dismiss a pleading that has been superseded." Wimberly v. Broome, No. 6:15-cv-23, 2016 U.S. Dist. LEXIS 41480, 2016 WL 3264346, at *1 (S.D. Ga. Mar. 29, 2016) (collecting cases). The Court has reviewed Plaintiff's Amended Complaint and found no reference to, or adoption of, any allegations set forth in the original Complaint. (See doc. 9.) As such, the Amended Complaint is the sole operative pleading in this case and renders moot Defendant's Motion to Dismiss the original Complaint. (Doc. 5.) Accordingly, the Court **DENIES as moot** Defendant's Motion to Dismiss the original Complaint. (Id.)

Ct. 1955, 167 L. Ed. 2d 929 (2007)).

The plausibility standard is "not akin to a probability requirement, but it asks [*7] for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief" and dismissal is proper. Id. (internal quotation marks and citation omitted). Dismissal under Rule 12(b)(6) is also permitted "when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist., 992 F.2d 1171, 1174 (11th Cir. 1993); see also Neitzke v. Williams, 490 U.S. 319, 326-27, 109 S. Ct. 1827, 104 L. Ed. 2d 338 (1989) (stating that Rule 12 allows a court "to dismiss a claim on the basis of a dispositive issue of law").

In this case, the University contends that Plaintiff's claims are time-barred. Dismissal on limitations grounds is only appropriate "if it is apparent from the face of the complaint" that plaintiff's claims are time-barred. Gonsalvez v. Celebrity Cruises Inc., 750 F.3d 1195, 1197 (11th Cir. 2013). "A statute of limitations defense can support dismissal under Rule 12(b)(6) only if it is clear from the face of the complaint that the statute of limitations has run, and it appears beyond doubt that the plaintiff can prove no set of facts that toll the statute." Valencia v. Universal City Studios LLC, No. 1:14-CV-00528-RWS, 2014 U.S. Dist. LEXIS 174644, 2014 WL 7240526, at *3 (N.D. Ga. Dec. 18, 2014) (citations omitted).

## DISCUSSION

The Amended Complaint alleges three counts: (1) unlawful termination in violation of the ADA [*8] (Count I); (2) retaliation in violation of the ADA and Section 504 of the Rehabilitation Act (Count II); and (3) failure to accommodate in violation of the ADA and Section 504 of the Rehabilitation Act

(Count III).[9] (Doc. 9, pp. 8-12.) The University argues that the Court should dismiss the Amended Complaint because Georgia's two-year statute of limitations under O.C.G.A. § 9-3-33 bars Plaintiff's claims. (See doc. 13); see also O.C.G.A. § 9-3-33. Plaintiff concedes that Georgia's two-year statute of limitations under O.C.G.A. § 9-3-33 applies to her claims but contends that the Georgia Supreme Court's Fourth Order Extending the Declaration of Statewide Judicial Emergency tolled the statute of limitations for 122 days.[10] (Doc. 15, pp. 8-11.)

## I. Applicable Statute of Limitations

Because Title III of the ADA and the Rehabilitation Act do not contain independent statutes of limitations, claims under each Act are "governed by the most analogous state statute of limitations." Hunt v. Ga. Dep't of Comm. Affs., 490 F. App'x 196, 197 (11th Cir. 2012) (citing Everett v. Cobb

---

[9] The Amended Complaint does not specify under which Title of the ADA Plaintiff seeks relief. (See doc. 9.) However, because Plaintiff was a student at a private institution, (see id. at pp. 1, 6), the Court presumes that Plaintiff alleges claims under Title III of the ADA. See 42 U.S.C. § 12181 et seq.; see also Price v. City of Ocala, 375 F. Supp. 3d 1264, 1268 (M.D. Fla. 2019) ("The ADA covers three main types of discrimination, each of which is addressed in one of the statute's three main subchapters: Title I prohibits discrimination in private employment; Title II prohibits discrimination by public entities (state or local governments); and Title III prohibits discrimination by a 'place of public accommodation,' which is a private entity that offers commercial services to the public.") (quoting A.L. by & through D.L. v. Walt Disney Parks & Resorts US, Inc., 900 F.3d 1270, 1289 (11th Cir. 2018)).

[10] Plaintiff concedes to the dismissal of her unlawful termination claim contained in Count I. (See doc. 15, p. 7.) Accordingly, the Court **DISMISSES** Count I of the Amended Complaint. (Doc. 9); see, e.g., Powell v. Fravel, No. 6:16-cv-1630-Orl-37DCI, 2017 U.S. Dist. LEXIS 20318, 2017 WL 589185, at *2 (M.D. Fla. Feb. 14, 2017) ("Plaintiff concedes the dismissal of Count XXII . . . . In light of Plaintiff's concession, Count XXII is due to be dismissed."); Battiste v. Jenne, No. 05-22970-CIV-HUCK/GARBER, 2006 U.S. Dist. LEXIS 113591, 2006 WL 8432517, at *1 (S.D. Fla. June 14, 2006) ("Defendants . . . move to dismiss Counts VI and VII . . . . Plaintiffs concede to the dismissal of these counts. Accordingly, . . . Defendants' Motion to Dismiss is granted with respect to Counts VI and VII.").

Cnty. Sch. Dist., 138 F.3d 1407, 1409-10 (11th Cir. 1998)). In Georgia, that statute is O.C.G.A. § 9-3-33. See id. (citing Everett, 138 F.3d at 1409-10). Section 9-3-33 provides that "actions for injuries to the person shall be brought within two years after the right of action accrues." O.C.G.A. § 9-3-33. Therefore, Georgia's two-year statute of limitations under O.C.G.A. § 9-3-33 governs her claims. See, e.g., Silva v. Baptist Health S. Fla., 856 F.3d 824, 841 (11th Cir. 2017) (applying Florida's [*9] statute of limitations for personal injury actions to claims under Title III of the ADA and the Rehabilitation Act); Horsley v. Univ. of Ala., 564 F. App'x 1006, 1008-09 (11th Cir. 2014) (applying Alabama's two-year statute of limitations for personal injuries to claim under Title II of the ADA).

## II. Tolling of the Statute of Limitations

While Plaintiff does not dispute that the two-year statute of limitations under O.C.G.A. § 9-3-33 applies to her claims, (doc. 15, p. 8-9), Plaintiff does contend that her claims are timely because the statute of limitations was tolled under Georgia law. (Id. at pp. 8-11.) Specifically, Plaintiff argues that the Georgia Supreme Court's Fourth Order Extending the Declaration of Statewide Judicial Emergency (the "Emergency Order") tolled the applicable statute of limitations. (Doc. 15, pp. 8-11.) Thus, according to Plaintiff, any claims that accrued on or after February 6, 2019, were timely when filed on June 8, 2021.[11] (Id. at p. 11.)

As an initial matter, because federal courts borrow states' statutes of limitations for claims under the ADA and Rehabilitation Act, federal courts also borrow states' tolling rules applicable to those statutes of limitations, unless the tolling rules are inconsistent with the federal policy underlying [*10] the claims. See Thomas v. Lee, 298 F. App'x 906, 908 (11th Cir. 2008) ("For [Section] 1983 claims, we borrow not only the state's statute of limitations, but also its body of tolling rules unless it is inconsistent with the federal policy underlying the claim.") (citing Bd. of Regents of Univ. of State of N.Y. v. Tomanio, 446 U.S. 478, 484-86, 100 S. Ct. 1790, 64 L. Ed. 2d 440 (1980)); see Hawthorne v. Wells, 761 F.2d 1514, 1515 n.7 (11th Cir. 1985) ("Where Congress has provided no limitations period for a federal claim . . ., a court must borrow the applicable limitations period and tolling rules from the state in which it sits, unless those rules are inconsistent with federal policy."). Indeed, the parties do not dispute that the Court should borrow Georgia's tolling rules unless those rules are inconsistent with the federal policy underlying ADA and Rehabilitation Act claims. (See doc. 15, p. 9; doc. 17, p. 4.)

In response to the COVID-19 pandemic, the Georgia Supreme Court entered several orders extending statute of limitations deadlines.[12] In the Emergency Order, the Georgia Supreme Court declared that "[t]he 122 days between March 14 and July 14, 2020, or any portion of that period in which a statute of limitation would have run, shall be excluded from the calculation of that statute of limitation." Fourth Order Extending Declaration of Statewide Judicial Emergency, Supreme Court of Georgia, https://www.gasupreme.us/wp-content/uploads/2020/07/4th-SJEO-FINAL.pdf [*11] (July 10, 2020). The Georgia Supreme Court then issued additional guidance on

---

[11] In her Response, Plaintiff states that "any claims that accrued *on or before* February 6, 2019[,] are timely." (Doc. 15, p. 11 (emphasis added).) Considering any claims that accrued before February 6, 2019, would clearly be *untimely*, even with tolling under the Emergency Order, the Court assumes Plaintiff intended to argue that any claims that accrued *on or after* February 6, 2019, are timely.

[12] The Georgia Supreme Court first issued an order extending statutes of limitations deadlines on March 14, 2020. See Order Declaring Statewide Judicial Emergency, Supreme Court of Georgia, https://www.gasupreme.us/wp-content/uploads/2020/03/CJ-Melton-amended-Statewide-Jud-Emergency-order.pdf (Mar. 14, 2020). The subsequent orders extending the statewide judicial emergency can be found on the Georgia Supreme Court's website at https://www.gasupreme.us/court-information/court corona info/.

the tolling of statutes of limitations under the statewide judicial emergency orders (the "Guidance Order"). See Guidance on Tolling Statutes of Limitation Under the Chief Justice's Order Declaring Statewide Judicial Emergency, Supreme Court of Georgia, https://www.gasupreme.us/wp-content/uploads/2020/04/Guidance-for-Tolling-Statutes-of-Limitation-04 06 20.pdf (Apr. 6, 2020). The Guidance Order states,

> [T]he tolling of a statute of limitation suspends the running of the period of limitation, but it does not reset the period of limitation. If the period of limitation for a particular cause of action commenced prior to March 14, 2020—that is, if the "clock" had started to run before the entry of the Chief Justice's order—the running of the period of limitation was suspended on March 14, and the running of that period will resume when the tolling provision of the March 14 declaration has expired or is otherwise terminated. If the event that triggers the running of a period of limitation occurred on or after March 14—that is, if the "clock" had not started to run before a statewide judicial emergency was declared—the [*12] period of limitation will not begin to run until the tolling provision of the March 14 declaration has expired or is otherwise terminated. In either circumstance, *whatever time remained in the period of limitation as of March 14 will still remain when the tolling provision of the March 14 declaration has expired or is otherwise terminated.*

Id. (emphasis added). The tolling provision for statutes of limitations expired on July 14, 2020. See Fourth Order Extending Declaration of Statewide Judicial Emergency, Supreme Court of Georgia, https://www.gasupreme.us/wp-content/uploads/2020/07/4th-SJEO-FINAL.pdf (July 10, 2020).

The University contends that the Emergency Order does not apply to Plaintiff's claims because the applicable statute of limitations "was set to expire well **after** the 122-day period set forth in the Emergency Order." (Doc. 23, p. 2.) In other words, the University contends that the Emergency Order only applies to claims that expired within the 122 days between March 14, 2020, and July 14, 2020. (Id.) However, the Guidance Order clearly contradicts the University's argument. Indeed, the Guidance Order states that, for statutes of limitations that began running prior to [*13] March 14, 2020, "the running of the period of limitation was suspended on March 14, and the running of that period will resume when the tolling provision of the March 14 declaration has expired." See Guidance on Tolling Statutes of Limitation Under the Chief Justice's Order Declaring Statewide Judicial Emergency, Supreme Court of Georgia, https://www.gasupreme.us/wp-content/uploads/2020/04/Guidance-for-Tolling-Statutes-of-Limitation-04 06 20.pdf (Apr. 6, 2020). The Guidance Order then states that "whatever time remained in the period of limitation as of March 14 will still remain when the tolling provision of the March 14 declaration has expired or is otherwise terminated." Id. Here, Plaintiff's claims accrued before March 14, 2020, and were set to expire after July 14, 2020. See Discussion Section III, infra. Thus, under the clear language of the Emergency Order and the Guidance Order, the time between March 14, 2020, and July 14, 2020, does not count towards the calculation for the running of the statute of limitations. In other words, the Emergency Order and Guidance Order granted Plaintiff an additional 122 days (the time between March 14 and July 14, 2020) to file her claims. [*14] Plaintiff filed her original Complaint on June 8, 2021. (See doc. 1.) Thus, to properly calculate the statute of limitations for Plaintiff's claims, the Court starts at June 8, 2021, and counts backward two years (for the two-year statute of limitations) and 122 days (for the Emergency Order and Guidance Order). Two years prior to June 8, 2021, is June 8, 2019. One-hundred and twenty-two days prior to June 8, 2019, is February 6, 2019. Thus, any claims alleged in Plaintiff's Amended

Complaint that accrued on or after February 6, 2019, are timely.[13]See Beauparlant v. Aiken, 868 S.E.2d 482 , 362 Ga. App. 341, 2022 Ga. App. LEXIS 35, 2022 WL 213215, at *2 (Ga. Ct. App. Jan. 25, 2022) ("In accordance with the plain language of the emergency orders . . ., the statute of limitation in this case was, in fact, tolled between March 14, 2020, and June 11, 2020—approximately 90 days—which is the period between March 14 and July 14, 2020[,] in which the statute of limitation would have run with respect to Appellant's personal-injury claim. Excluding this 90-day period from the calculation of the statute of limitation in this case—as is plainly required by the Third Order Extending Statewide Judicial Emergency—Appellant filed her complaint and effectuated service well within the relevant statute of limitation . . . .").

The University next argues that the Emergency Order's tolling rules do not apply to Plaintiff's claims because "the Georgia Supreme Court's emergency COVID-19 order should be disregarded as inconsistent with federal policy." (Doc. 17, p. 4.) According to the University, "[i]t has become the policy for an overwhelming majority of federal courts, including this Court, to deny the tolling of statutes of limitations for COVID-19 reasons without a showing of extraordinary circumstances," and Plaintiff failed to make "any showing that the COVID-19 pandemic interfered with her efforts to

timely pursue her claim." (Id. at pp. 4-5.) Thus, the University reasons, "[e]ven if the [E]mergency [O]rder [is] applicable, it should be disregarded as inconsistent with a clear federal policy to deny the tolling of a statute of limitations for COVID-19 reasons without a showing of extraordinary circumstances." (Id.) The Court disagrees.

First, the Court is skeptical of the University's claim that a COVID-19 pandemic policy exists, much less that any such policy could, at this point, be considered "established." Indeed, the cases cited by the University in support [*16] of the purported federal "policy" regarding tolling during the COVID-19 pandemic all relate to *equitable* tolling, not tolling pursuant to an order of a state's highest court. See Shaw v. United States, No. 2:20-cv-112, 2021 U.S. Dist. LEXIS 142620, 2021 WL 3205067, at *2-3 (S.D. Ga. June 24, 2021) (litigant not entitled to equitable tolling because he "fail[ed] to show he was pursuing his rights diligently and some extraordinary circumstances prevented him from executing his [Section] 2255 Motion prior to September 9, 2020"); Powell v. United States, 1:21-cv-023, 2021 U.S. Dist. LEXIS 114503, 2021 WL 2492462, at *3-5 (S.D. Ga. May 24, 2021) ("[B]lanket allegations without evidence showing the COVID-19 pandemic interfered with Petitioner's diligent efforts to pursue his rights does not warrant equitable tolling."); Chapman-Sexton v. United States, No. 2:20-CV-3661, 2021 U.S. Dist. LEXIS 16026, 2021 WL 292027, at *3 (S.D. Ohio Jan. 28, 2021) (petitioner not entitled to equitable tolling because "[t]he record [did] not indicate that impact of any extraordinary circumstances imposed by COVID-19 prevented [the petitioner] from timely filing this federal habeas corpus petition"); Mims v. United States, 4:20-CV-1538 RWS, 2021 U.S. Dist. LEXIS 22314, 2021 WL 409954, at *2-5 (E.D. Mo. Feb. 5, 2021) (finding that COVID-19 pandemic did not warrant equitable tolling where the movant failed to show he diligently pursued his rights or explain how the pandemic impeded his ability to do so). However, as the University acknowledges, Plaintiff is not arguing that

---

[13] The Court acknowledges that the United States District Court for the Middle District of Georgia agreed with the University's interpretation of the Emergency Order in [*15] Owens v. Perdue Farms, Inc., No. 5:20-cv-00307-TES, 2021 U.S. Dist. LEXIS 81990, 2021 WL 1701922, at *2-3 (M.D. Ga. Apr. 29, 2021). However, in Owens, the district court did not consider the Guidance Order's direction that if a period of limitations "commenced prior to March 14, 2020[,]" then the "running of that period of limitations was suspended" and would not resume until "the tolling provision of the March 14 declaration . . . expired." See id.; see also Guidance on Tolling Statutes of Limitation Under the Chief Justice's Order Declaring Statewide Judicial Emergency, Supreme Court of Georgia, https://www.gasupreme.us/wp-content/uploads/2020/04/Guidance-for-Tolling-Statutes-of-Limitation-04 06 20.pdf (Apr. 6, 2020). Thus, the Court finds Owens unpersuasive.

she [*17] has provided grounds for equitable tolling but, rather, that the Emergency Order entitles her to tolling. (See doc. 17, p. 5 n.2 ("It does not appear that [Plaintiff] has made a claim for equitable tolling.").) Thus, it is unclear that the "pandemic policy" the University derives from these cases even applies to this case.

Moreover, even assuming that federal courts have developed a policy to deny tolling due to the COVID-19 pandemic without a showing of extraordinary circumstances, the University made no effort to show how that policy is a federal policy that underlies the ADA and Rehabilitation Act. (See docs. 17, 23.) As noted above, courts apply state tolling rules to federal claims unless they are "inconsistent with the *remedial policies underlying the federal statute*." Beasley v. Ala. State Univ., 966 F. Supp. 1117, 1128 (M.D. Ala. 1997) (emphasis added) (citing Rubin v. O'Koren, 644 F.2d 1023, 1025 (5th Cir. Unit B 1981)); see Thomas, 298 F. App'x at 908 ("For [Section] 1983 claims, we borrow not only the state's statute of limitations, but also its body of tolling rules unless it is inconsistent with the *federal policy underlying the claim*.") (emphasis added) (citing Tomanio, 446 U.S. at 484-86). Instead of illustrating how any COVID-19 pandemic policy relates to the federal policies underlying the ADA and Rehabilitation Act, the University argues generally that there [*18] is a federal policy against tolling for COVID-19 reasons absent extraordinary circumstances. (See doc. 17, pp. 4-6.) Indeed, the University failed to make any connection between the purported COVID-19 tolling policy and the federal policies underlying the ADA and the Rehabilitation Act. Thus, the Court is unpersuaded by the University's argument.[14]

---

[14] Plaintiff appears to also argue that the statute of limitations pertaining to her claims is further tolled by her efforts to appeal her failing grades and subsequent dismissal from the University. (Doc. 15, p. 11.) However, pursuing an appeal of her grades and dismissal with the University is insufficient to warrant further tolling of Plaintiff's claims. See Horsley, 564 F. App'x at 1009 ("While it is true that Horsley was actively pursuing numerous appeals during the

## III. Accrual

"A limitations period begins to run when a cause of action accrues." Horsley, 564 F. App'x at 1008 (citing Rozar v. Mullis, 85 F.3d 556, 561 (11th Cir. 1996)). While state law determines the applicable statute of limitations, "[f]ederal law determines when a federal civil rights claim accrues." Rozar, 85 F.3d at 561. ADA and Rehabilitation Act claims accrue "when the plaintiff is informed of the discriminatory act." Everett, 138 F.3d at 1410 (citing Delaware State Coll. v. Ricks, 449 U.S. 250, 258, 101 S. Ct. 498, 66 L. Ed. 2d 431 (1980)); see Atchison v. Bd. of Regents of Univ. Sys. of Ga., 802 F. App'x 495, 507 (11th Cir. 2020) ("[T]he statute of limitations started running 'when the facts which would support a cause of action are apparent or should be apparent to a person with a reasonably prudent regard for his rights.'") (quoting Rozar, 85 F.3d at 561-62). "Plaintiffs must know or have reason to know that they were injured[] and must be aware or should be aware of who inflicted the injury." Rozar, 85 F.3d at 562.

In certain circumstances, even if a plaintiff's claim is untimely, the "continuing violation doctrine" might salvage that claim. See Ctr. for Biological Diversity v. Hamilton, 453 F.3d 1331, 1334 (11th Cir. 2006) ("The continuing [*19] violation doctrine permits a plaintiff to sue on an otherwise time-barred claim when additional violations of the law occur within the statutory period."). Under the continuing violation doctrine, "as long as one of the separate wrongful acts contributing to the collective conduct 'occurs within the filing period,' a court

---

intervening period between the time she suffered the injury and the time she filed her complaint, she has alleged no reason that she could not have concurrently pursued a federal court action."); Jordan v. City of Montgomery, 283 F. App'x 766, 768 (11th Cir. 2008) (finding that city employee's appeal through a personnel board did not toll EEOC charge-filing deadline); Milner v. City of Montgomery, No. 2:19cv799-MHT, 2021 U.S. Dist. LEXIS 11193, 2021 WL 218728, at *3 (M.D. Ala. Jan. 21, 2021) (finding that the "pursuit of internal appeals or grievance procedures" did not toll time limit to file EEOC Charge).

may consider 'the *entire* time period'—including those separate acts falling outside the filing period—'for purposes of determining liability.'" [Hamer v. City of Trinidad, 924 F.3d 1093, 1098-99 (10th Cir. 2019)](quoting [Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 117, 122 S. Ct. 2061, 153 L. Ed. 2d 106 (2002)](; see [Hipp v. Liberty Nat'l Life Ins. Co., 252 F.3d 1208, 1221-22 (11th Cir. 2001)] (explaining the continuing violation doctrine). However, in <u>National Railroad Passenger Corp. v. Morgan</u>, the Supreme Court held that the continuing violation doctrine is inapplicable to discrete acts of discrimination or retaliation that occurred outside the statutory limitations period, "even when they are related to acts [timely] alleged." [536 U.S. at 113]; see [Abram v. Fulton Cnty. Gov't, 598 F. App'x 672, 675 (11th Cir. 2015)].

## A. Retaliation

As discussed in Discussion Section II, <u>supra</u>, any claims alleged in the Amended Complaint that accrued before February 6, 2019, are time barred. For Plaintiff's retaliation claims to be timely, Plaintiff must have first been informed of the retaliatory act(s) on or after February 6, 2019. <u>See</u> [Everett, 138 F.3d at 1410]. In Count II, Plaintiff alleges that the University retaliated [*20] against her after "she complained to her professors and others regarding [her] treatment" and "filed a grievance with student affairs." (Doc. 9, p. 9.) Plaintiff alleges that the retaliatory acts include giving her "a failing grade from the same professor that [sic] she complained about" and "remov[ing] [her] from her degree program." (<u>Id.</u> at p. 10.) Plaintiff also appears to allege that the University retaliated against her by removing her clinical certifications. (<u>See id.</u>)

Plaintiff received failing grades on her exams in November and December 2018 and received a failing grade in APPE on December 14, 2018. (Doc. 9, p. 5.) Plaintiff subsequently filed a

grievance regarding those grades on January 3, 2019. (<u>Id.</u>) Thus, Plaintiff's retaliation claim, to the extent it is based on her failing grade(s), accrued, at the latest, on January 3, 2019, when she complained about them to the University (which indicates she had been informed of them by that date). <u>See, e.g.,</u> [Yearwood v. Holloway, No. 3:04 CV 023(CAR), 2005 U.S. Dist. LEXIS 17078, 2005 WL 1926605, at *5 (M.D. Ga. Aug. 11, 2005)] ("Plaintiff was notified by letter that her contract would not be renewed on February 28, 2002. Thus, her claim would have to be brought by February 28, 2004[,] to be arguably within the [two-year] statute of limitations period."). [*21] Therefore, Plaintiff's retaliation claim is time barred to the extent it is premised on her having received failing grades.[15]

On the other hand, to the extent Plaintiff alleges that the University retaliated against her by dismissing her from her degree program and removing or revoking her clinical certifications, those claims accrued on March 4, 2019, (when the University notified her that it had released her from her degree program), and in March 2020, respectively. (Doc. 9, pp. 6-7.) Therefore, to the extent Plaintiff's retaliation claim is premised on her dismissal from the degree program and the removal of her clinical certifications, those claims are timely.[16]

---

[15] To the extent Plaintiff argues that the continuing violation doctrine salvages the untimely portions of her retaliation claim, (doc. 15, p. 11), this argument fails because retaliation claims are "discrete discriminatory act[s]" to which the continuing violation doctrine does not apply. <u>See, e.g.,</u> [Riccard v. Prudential Ins. Co., 307 F.3d 1277, 1291-92 (11th Cir. 2002)] (finding that retaliatory acts are discrete discriminatory acts not subject to a continuing violation theory).

[16] While the University contends that the dismissal from school and subsequent loss of certifications are untimely because they were "continuing ill effects" of the University's alleged retaliatory acts, (doc. 17, pp. 11-12), the Amended Complaint appears to allege that these acts were discrete retaliatory acts, (see doc. 9, p. 10 ("Defendant . . . removed Plaintiff [from her degree program] in retaliation for her complaints.")). Thus, looking to the face of the Amended Complaint and construing the allegations therein as true, the Court finds the University's argument unpersuasive.

## B. Failure to Accommodate

Under Count III, Plaintiff alleges that the University failed to accommodate her disability during "the administration of exams" and "her clinical rotation at the VA." (Id. at p. 11.) Plaintiff further alleges that the University's "failure to accommodate [her] disability-related needs caused [her] to be removed and excluded from participation in the pharmacy school program." (Id.) However, the relevant question is when Plaintiff knew that she was being "discriminated against on the basis [*22] of disability" through the refusal to "make reasonable modifications in policies, practices, or procedures" to accommodate her disability. 42 U.S.C. §§ 12182(a), 12182(b)(2)(A)(ii). Plaintiff knew of each of the conceivable failures to accommodate alleged in the Amended Complaint prior to February 6, 2019. Indeed, the Amended Complaint alleges that Plaintiff "was granted limited and incomplete ADA accommodations on or about June 30, 2016, February 16, 2017, [and] August 31, 2018." (Doc. 9, p. 2.) The Amended Complaint also alleges that from August 31, 2018 (when Plaintiff entered the third year of her degree program), to December 18, 2018, the University (1) placed her in a clinical rotation that did not meet her ADA accommodations; (2) ignored her requests to be transferred to a clinical rotation that did meet her ADA accommodations; (3) required her to take exams that did not comply with her ADA accommodations; and (4) gave her failing grades on her exams and in APPE. (Id. at pp. 3-5.) The Amended Complaint further alleges that Plaintiff complained about the alleged discriminatory treatment she received from Dr. Kowalewski and the University and appealed her failing grade on January 3, 2019. (Id. at p. 5.) Therefore, [*23] any failure to accommodate claim Plaintiff alleged in the Amended Complaint accrued, at the latest, on January 3, 2019, when Plaintiff complained about the discriminatory treatment and appealed her failing grade. At that time, Plaintiff knew she had

suffered an injury and that it was a result of the University and Dr. Kowalewski's failures to accommodate her disability. She cannot argue that the statute of limitations was somehow delayed until she suffered the final consequences of that discrimination. See Horsley, 564 F. App'x at 1009 ("Based on the face of the complaint, the district court properly dismissed Horsley's claims as barred by the two-year statute of limitations because the claims were untimely. Horsley received her grades for the fall semester of 2007 and the spring semester of 2010 in December of 2007 and May of 2010, respectively. Furthermore, the open confrontation regarding Horsley's absences and other personal information took place on February 28, 2010. Finally, the Defendants' request that Horsley sign the release of claim form was made on July 22, 2010. Accordingly, by July 22, 2010[,] at the latest, Horsley knew she had suffered an injury, and that it was a result of the Defendants' failure [*24] to accommodate her disability. Yet she failed to file a complaint until February 1, 2013, beyond the two-year statute of limitations period.") (citations omitted); see also Bird v. Lewis & Clark Coll., 303 F.3d 1015, 1020 (9th Cir. 2002) (in context of student's standing to bring Title III claim, poor grades were sufficient to establish injury); Soignier v. Am. Bd. of Plastic Surgery, 92 F.3d 547, 549-53 (7th Cir. 1996) (plaintiff's disability claims accrued when the examination board administered final oral examination without plaintiff's requested accommodations because it is the "discovery of the original act of discrimination, not future confirmation of the injury or determination that the injury is unlawful," that triggers the statute of limitations); Lever v. Nw. Univ., 979 F.2d 552, 553 (7th Cir. 1992) ("Time starts to run with 'the *discriminatory act*, not the point at which the *consequences* of the act become painful.'") (emphasis in original) (quoting Chardon v. Fernandez, 454 U.S. 6, 8, 102 S. Ct. 28, 70 L. Ed. 2d 6 (1981)); Malas v. Hinsdale Twp. Disrict #86, No. 15-cv-10490, 2019 U.S. Dist. LEXIS 109395, 2019 WL 2743590, at *17 (N.D. Ill. July 1, 2019) ("A failure to accommodate claim accrues

when the accommodation is denied."); Castelino v. Rose-Hulman Inst. of Tech., No. 2:17-cv-139-WTL-MJD, 2019 U.S. Dist. LEXIS 14628, 2019 WL 367623, at *8 n.10 (S.D. Ind. Jan. 30, 2019) (finding that a student's ADA claims based on failure to provide accommodations during tests were time barred as tests took place more than two years before suit was filed and rejecting student's argument that his claims did not accrue until he was told that he would not be permitted [*25] to reapply to defendant school because statute of limitations began to run when he discovered the original acts of discrimination). Thus, Plaintiff's failure to accommodate claim asserted in Count III was untimely when she filed her Complaint on June 8, 2021, and is subject to dismissal.[17]

## CONCLUSION

Based on the foregoing, the Court **DENIES as moot** Defendant South University's Motion to Dismiss the original Complaint. (Doc. 5.) Furthermore, the Court **GRANTS in part** and **DENIES in part** Defendant South University's Motion to Dismiss the Amended Complaint. (Doc. 13.) Specifically, the Court **DISMISSES** Counts I and III, each in their entirety. The Court also **DISMISSES** Count II to the extent Count II is based on any retaliation claims that accrued prior to February 6, 2019, including the retaliation claim

premised on the University giving Plaintiff failing grades on her exams and in the APPE course. However, Plaintiff's claims, in Count II, that her dismissal from the degree program and the removal of her clinical certifications constitute actionable retaliation are not barred by the statute of limitations and thus are permitted to proceed. The Court **LIFTS** [*26] the discovery stay, (see doc. 12), and reminds the parties of their obligation to confer and submit a report in compliance with Federal Rule of Civil Procedure 26(f) and this Court's Order, (doc. 3), within fourteen days of the date of this Order, (see doc. 12).

**SO ORDERED**, this 3rd day of March, 2022.

/s/ R. Stan Baker

R. STAN BAKER

UNITED STATES DISTRICT JUDGE

SOUTHERN DISTRICT OF GEORGIA

---

End of Document

---

[17] To the extent Plaintiff argues that the University's failures to accommodate constitute a "continuing violation," the Court notes that "a claim for failure to accommodate involves discrete acts of alleged discrimination rather than a continuing violation." Campbell v. Boies, Schiller, Flexner LLP, 543 F. Supp. 3d 1334, 1344 (S.D. Fla. June 10, 2021) (citing Abram, 598 F. App'x at 676). Thus, the continuing violation doctrine does not apply to Plaintiff's failure to accommodate claims. See Morgan, 536 U.S. at 113 (2002) ("[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. Each discrete discriminatory act starts a new clock for filing charges alleging that act."); Johns v. Marsh & McLennan Agency LLC, No. 3:19-cv-687-ALB-SRW, 2020 U.S. Dist. LEXIS 55855, 2020 WL 1540397, at *2 (M.D. Ala. Mar. 31, 2020) ("[A] continuing violation theory is not applicable to discrete discriminatory acts like the denial of a reasonable accommodation.").