## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

JACQUELINE R. EVERSON,                )
                                      )
                    Plaintiff,        )
                                      )
vs.                                   )
                                      )        Case No. 1:23-CV-02947
                                      )
THE COCA-COLA COMPANY,                )
                                      )
LIBERTY MUTUAL INSURANCE              )
COMPANY,                              )
                                      )
                    Defendant.        )

FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

AUG 11 2023

KEVIN P WEIMER, Clerk
By_____ Deputy Clerk

## CERTIFICATE OF SERVICE

I hereby certify that on this 11th Day of August, 2023, I filed PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT and MEMORANDUM OF LAW in Response to The Coca-Cola Company's Motion to Dismiss Plaintiff's Complaint in this Claim with the Clerk for The Northern District of Georgia, Atlanta Division. I certify that I have this day served pro se Defendants, The Coca-Cola Company and Liberty Mutual Insurance Company, in the foregoing matter with a copy of the above said Plaintiff's answers, by causing a copy of same to be deposited in the United States Mail, postage prepaid and addressed as follows:

King & Spalding LLP                   Drew, Eckl & Farnham, LLP
c/o The Coca-Cola Company             c/o Liberty Mutual Insurance Company
1180 Peachtree Street, N.E.           880 W. Peachtree Street
Atlanta, GA 30309                     Atlanta, GA 30357

JACQUELINE EVERSON
1530 Locust Log Way
Austell, Georgia 30168
Plaintiff

- 1 -

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

Atlanta District Office
100 Alabama Street, SW, Suite 4R30
Atlanta, GA 30303
1-800-669-4000
Website: www.eeoc.gov

## DISMISSAL AND NOTICE OF RIGHTS

(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 08/04/2023

To: Mrs. Jacqueline R. Everson
1530 Locust Log Way
AUSTELL, GA 30168
Charge No: 410-2023-09920

EEOC Representative and email:    STEVEN GARCIA-REYES
Senior Federal Investigator
steven.garcia-reyes@eeoc.gov

## DISMISSAL OF CHARGE

The EEOC is closing this charge because your charge was not filed within the time limits under the law; in other words, you waited too long after the date of the alleged discrimination to file your charge.

## NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign-in to the EEOC Public Portal and upload the court complaint to charge 410-2023-09920.

On behalf of the Commission,

Digitally Signed By:Darrell E. Graham
08/04/2023

Darrell E. Graham
District Director

EXHIBIT

A



# Social Security Administration
# Benefit Verification Letter

Date: January 11, 2023
BNC#: 23YM579F10873
REF: A, DI

JACQUELINE RENAE EVERSON
HOME
1530 LOCUST LOG WAY
AUSTELL GA 30168-5827

You asked us for information from your record. The information that you requested is shown below. If you want anyone else to have this information, you may send them this letter.

**Information About Current Social Security Benefits**

Beginning December 2022, the full monthly Social Security benefit before any deductions is $2,578.10.

We deduct $164.90 for medical insurance premiums each month.

The regular monthly Social Security payment is $2,413.00.
(We must round down to the whole dollar.)

Social Security benefits for a given month are paid the following month. (For example, Social Security benefits for March are paid in April.)

Your Social Security benefits are paid on or about the second Wednesday of each month.

We found that you became disabled under our rules on August 29, 2003.

**Information About Past Social Security Benefits**

From December 2021 to November 2022, the full monthly Social Security benefit before any deductions was $2,371.80.

We deducted $170.10 for medical insurance premiums each month.

The regular monthly Social Security payment was $2,201.00.
(We must round down to the whole dollar.)

**Type of Social Security Benefit Information**

You are entitled to monthly disability benefits.

See Next Page

EXHIBIT

B

25. 11/9/2006, Plaintiff's Factual Objection to Order "Defendant's IME report is unreliable."    [Exhibit 25]

26. 05/21/2007, Plaintiff's Request To Judge For A Response.    [Exhibit 26]

27. 01/01/2003, Defendant's Disability Coverage Policy.    [Exhibit 27]

28. 03/30/2007, Plaintiff's Social Security, Decision – Fully Favorable [Exhibit 28]

29. Defendant's own policy requirements **Quote**
"Your policy requires that you apply for Social Security Disability Benefits." [Exhibit 1]

30. 03/28/2007, Plaintiff received a Fully Favorable decision at her Social Security Hearing. [Exhibit 28]

31. Social Security Administration: Administrative Law Judge Approved
Plaintiff's disability effective her last day at work;    [Exhibit 28]    Quote;

(A). "To summarize briefly, I found you disabled on August 29, 2003, because of degenerative joint disease so severe that you are unable to perform any work existing in significant numbers in the national economy". [Exhibit 28]

32. 03/25/2005, Confirms Dr. D'Auria's second request for additional information from Dr. Washington regarding muscle activity vs. severe radiculopathy. [Exhibit 29]

33. Defendant's Answer to Plaintiff's Complaint. [Exhibit 30]    Quote;
"First Defense; Plaintiff is not disabled within the terms of the group disability income insurance policy ("the group policy") issued by Liberty Life to plaintiff's former employer"

EXHIBIT

C



Liberty Life Assurance Company of Boston
Disability Claims
P.O. Box 242484
Charlotte, NC 28224-2484
Phone No.: (800) 291-0112
Secure Fax No.: (888) 443-4212

April 14, 2004

Jacqueline Everson
1530 Locust Log Way
Austell, GA 30168-0000

RE:    Long Term Disability Benefits
       The Coca-Cola Company
       Claim #: 790865

Dear Ms. Everson:

We are writing in regards to your claim for disability benefits under The Coca-Cola Company's Group Disability Income Policy. Based on the definition of disability and on the medical information in our file, you qualify for Long Term Disability Benefits.

The definition of disability states that for the first 24 months, disability will be evaluated relative to the employee's inability to perform the material and substantial duties of his occupation.

After 24 months, disability will be evaluated relative to the employee's inability to perform the material and substantial duties of his own or any occupation for which he is or becomes reasonably fitted for.

Your claim will be evaluated periodically to determine ongoing disability as the above definitions do not assume payment through the maximum benefit duration established in the Policy, but provide timeframes for specific definitions of disability.

You must satisfy an elimination period before receiving benefits. According to your policy the Elimination Period would be the greater of the end of the Covered Person's Short Term Disability Benefits; or 180 days. You ceased receiving Short Term Disability on March 4, 2004 which would be the greater of therefore your benefits would begin on March 05, 2004.

The Policy under which your claim has been approved provides benefits at 70% of your monthly pre-disability income. Based on your earnings of $5,289.70 per month, your monthly gross benefit amount is $3,702.79.

This is your gross benefit amount, however, this amount is adjusted by various other forms of income, called "offsets." Specifically, the Policy states that benefits such as Workers' Compensation, Social Security Disability, Retirement from current employer, and other Disability Benefits which you may be eligible to receive are considered as offsets to your Long Term Disability Benefits.

EXHIBIT

D

LLCL0419

If your benefit is overpaid, Liberty Life Assurance Company of Boston has the right to recover the amount overpaid in full. To avoid an overpayment, please notify our office immediately if you return to work or begin receiving "other income benefits" as indicated in your Policy.

Your Policy requires that you apply for Social Security Disability Benefits, should your disability be expected to extend for twelve months. Our records indicated you have applied. Please send us a copy of the notice of application you received from Social Security. Please complete and return the enclosed Social Security Authorization and Social Security/Reimbursement Agreement.

Federal Income Taxes may be deducted from your benefit on a voluntary basis. The law requires you designate the amount to be withheld on the enclosed DP405 form in whole dollars equaling no less than $88.00 per month.

You may have your benefit checks automatically deposited into your checking or savings account by completing the enclosed Direct Deposit Form.

Please send us a copy of your driver's license, complete the enclosed: Authorization, Claimant Supplementary Statement, Claimant Information Form, Combined Questionnaire, Training, Education and Experience Form, Social Security Authorization, the Social Security/Reimbursement Agreement, DP405 Tax Withholding and Direct Deposit Form, and return them in the envelope provided by May 14, 2004.

Also, on April 14, 2004 we requested medical records from Resurgens Orthopedics (Dr. Cone-Sullivan) from September 11, 2003 to present and from Emory Healthcare Spine Center (Dr. Heller and Dr. Levy) from August 1, 2003 to present. Please contact these physicians' offices and request a response by May 14, 2004.

If you have any questions about your disability benefits or if there will be any delay in providing the requested forms, please call me.

Sincerely,

*Chandra E. Burch*

Chandra E. Burch
Disability Case Manager
Phone No.: (800) 291-0112 Ext. 382
Secure Fax No.: (888) 443-4212

Forms Attached:
Claimant Supplementary Statement
Claimant Information
Authorization
Direct Deposit Q and A Sheet
Direct Deposit Application
SSA Authorization
Combined Questionnarie
SS Reimbursement Agreement

LLCL0420

**04/15/2004 3:42 AM – CLAIM Note 23**
Claim: 790865
NoteSubject : Ref to Other
Other Subject : SCORE REFERRAL
Text: 4/14/2004 – REFERRED TO CONSULTING PHYSICIAN FOR LIMITED ASSESSMENT.

**04/14/2004 4:23 PM – CLAIM Note 22**
Claim: 790865
NoteSubject : LTR to ER
Other Subject : O/O APPR. LETTER
Text: [04/14/2004 – BURCH, CHANDRA]HAVE SENT COPY OF O/O APPR. LETTER TO CORP. HR-MELVA WILLIAMS

**04/14/2004 4:21 PM – CLAIM Note 21**
Claim: 790865
NoteSubject : LTR to EE
Other Subject : O/O APPR. LETTER
Text: [04/14/2004 – BURCH, CHANDRA]HAVE SENT O/O APPR. LETTER ALONG W/ ALL FORMS

**04/14/2004 3:29 PM – PHONE Note 18**
Claim: 790865
NoteSubject : Called EE
Other Subject :
Text: [04/14/2004 – CEROSKY, KATHLEEN]CLMT CALLED AND LEFT MESSAGE THAT SHE HAD A DR'S APPT AND WOULD CALL BACK AT 4. CALLED BACK AT 3:20 AND SHE WAS HOME, THEREFORE, ADVISED THE CLM WAS APPROVED AND A LTR WOULD BE SENT TO HER TODAY. VERIFIED SHE DID FILE FOR SS AND SHE DID. SHE WAS ADVISED TO NOTIFY US WHEN SHE GETS A DECISION. ALSO, ADVISED HER WE WILL REQUEST MEDICAL FROM DR LEVY, DR HELLER AND COLE SULLIVAN SO BE SURE THEY RESPOND.

**04/14/2004 1:52 PM – CLAIM Note 20**
Claim: 790865
NoteSubject : Medical Status
Other Subject : REQ. RECORDS
Text: [04/14/2004 – BURCH, CHANDRA]HAVE REQ. MEDICAL RECORDS FROM EMORY HEALTHCARE SPINE CENTER (DR. HELLER AND DR. LEVY) AND RESURGENS ORTHOPEDICS (DR. CONE-SULLIVAN)

**04/14/2004 1:41 PM – CLAIM Note 19**
Claim: 790865
NoteSubject : Other
Other Subject : MANAGER REVIEW
Text: [04/14/2004 – CEROSKY, KATHLEEN]DISCUSSED THE FILE WITH DR STEVE WHO REVIEWED THE MRI REPORT ALONG WITH NOTES AND ADVISED SHE IS TOTALLY DISABLED FROM WORKING AND THAT AN ERGO ASSESSMENT WOULD NOT ASSIST IN GETTING HER BACK TO WORK. APPROVE THE CLM,FOLLOW UP ON SS, REQUEST NOTES FROM DR CONE-SULLIVAN, DR HELLER AND DR LEVY FOR FILE DOCUMENTATION. ALSO REQUEST ALL FORMS FROM THE CLMT.[04/14/2004 – CEROSKY, KATHLEEN]DISCUSSED WITH JANETTE TO CLOSE OUT HER HANDLING OF THE CLAIM AS NOT A GOOD CANDIDATE FOR ASSISTING WITH RTW.

**04/14/2004 1:35 PM – PHONE Note 17**
Claim: 790865
NoteSubject : EE Called
Other Subject :
Text: [04/14/2004 – CEROSKY, KATHLEEN]CLMT CALLED UPSET THAT A DECISION HAS NOT BEEN MADE YET ON HER CLAIM. 770-739-4963. CALLED CLMT BACK AND SHE ADVISED THAT SHE CAN'T WORK AS SHE IS IN SEVERE PAIN. SHE SAID THAT HER NECK, ARM AND EAR ARE NUMB. THEY SAID SHE HAD CARPAL TUNNEL IN HER LEFT WRIST BUT CAN'T SURGERY DUE TO THE PROBLEMS WITH HER NECK. SHE ASKED TO BE SENT TO SOMEONE ELSE FOR A 2ND OPINION AND SAW DR CONE-SULLIVAN, DR HELLER AND DR LEVY. THEY WERE GOING TO HAVE HER HAVE A CT SCAN AND A MYELOGRAM BUT SHE CHOSE NOT TO AS THAT IS NOT GOING TO CHANGE ANYTHING. THEY SAID SURGERY WOULDN'T REALLY HELP HER. SHE IS ALSO HAVING A LOT OF DIZZINESS. I ADVISED HER THAT WE PROBABLY WOULD THE OTHER 3 PHYSICIAN'S RECORDS AS WE DON'T HAVE THEM AND ASKED IF SHE COULD CALL THEM TO GET THEM TO US. SHE WILL DO THAT. I ADVISED HER I WOULD DISCUSS WITH OUR MEDICAL DEPT AND CALL HER BACK THIS AFTERNOON. SHE SAID SHE WASN'T SURE WHY WE CONTACTED HER MANAGER AND NOT MELVA. I EXPLAINED THAT WE NEEDED THE JOB DESCRIPTION AND WE GO TO THE MANAGER. SHE NOW UNDERSTOOD. I ADVISED HER I WOULD CALL HER BACK. I TRIED TO CALL HER BACK AT 1:30 AND LEFT A MESSAGE ON HER ANSWERING MACHINE TO CALL HER BACK TO DISCUSS HER CLAIM.

**04/13/2004 2:41 PM – CLAIM Note 16**
Claim: 790865

EXHIBIT
E

LLCL0088

# STEWART FAMILY PRACTICE, P.C.

Committed to Promoting and Preserving Good Health

February 7, 2005

To Whom It May Concern:

RE:  Jacqueline Everson

Jacqueline Everson is permanently and totally disabled due to chronic, severe, neuropathic pain from her cervical spine.  Please review the additional medical evaluation (MRI of cervical spine and EMG of upper extremities).

Please contact me for related concerns.

Steven Stewart, M.D.

EXHIBIT

F

1900 Rockbridge Road, Suite C • Stone Mountain, GA 30087 • (770) 469-0668 • (770) 469-0676 (Fax)



Ann E.
Cegielski/US/NA/TCCC
03/17/2005 05:53 PM

To    Melva Williams/US/NA/TCCC@TCCC
cc    Craig Warren/US/NA/TCCC@TCCC
bcc
Subject    RE: J. Everson

Yes, I would do that (I believe Cheryl or Angela can assist with the Hewitt piece of this) - we should at least reinstate her through March (*but I would recommend backing out the term and leaving this open until we get final confirmation from LM about the status of her claim*). This should take the pressure off you on this matter, I am talking with LM to get updated communications on this one (and Flowers) so that we can correctly reflect those cases in our records. FYI, I am going to work with them to audit everything they've done since 1/1/03 to make sure no other similar cases sneak out like these two have. I just would feel better if we could determine the magnitude of this type of communications gap, and audit with them would be the best approach (and I don't think it will take me too long to run comparison reports from SAP and compare the two sets of data to flesh out inaccuracies, etc.).

Thanks. ac

**Ann E. Cegielski**
**Benefits Implementation Consultant**
**The Coca-Cola Company :**
**2000 St. James Place**
**Houston, TX 77056**
**(713) 888-5437**
(713) 888-7332 (fax)

Melva Williams/US/NA/TCCC

Melva Williams/US/NA/TCCC
03/17/2005 04:32 PM

To    Ann E. Cegielski/US/NA/TCCC@TCCC
cc    Craig Warren/US/NA/TCCC@TCCC
Subject    RE: J. Everson

Ann

Per the request in the attached e-mail I received correspondence from Liberty Mutual on 03/15/05. The correspondence confirms that Liberty Mutual advised Jacqueline Everson that they would re-open her claim and pay her LTD benefit until required testing is complete and a final determination is made regarding her benefit status. They then paid Ms. Everson for the period of 02/04/05 – 03/03/05. Ms. Everson was then advised that her claim would be closed by 03/18/05 if the required examination had not been completed.

Jacqueline Everson left me a voice mail today concerned about the fact that Hewitt has cancelled her benefits for the months of March and April and refunded her the money she had paid to cover her benefits for that period. Hewitt appropriately cancelled her benefits based on the original LTD termination information Liberty sent to my office in February. Ms. Everson wants this situation corrected.

Based on the correspondence I received this week from Liberty Mutual confirming that they re-opened Ms. Everson's case should I delete her termination status from the system and re-instate her LTD status until further notice? Ms. Everson is expecting me to correct the issue with Hewitt regarding her medical benefits and I need to receive immediate direction from you as to how I should proceed at this point to avoid further confusion and to properly manage Ms. Everson's expectations when I respond to her

EXHIBIT

G

KO/Everson 00799



Liberty Life Assurance Company of Boston
Disability Claims
P.O. Box 1525
Dover, NH 03821-1525
Phone No.: (800) 210-0268
Secure Fax No.: (603) 743-4794

March 29, 2005

Ms. Jacqueline Everson
1530 Locust Log Way
Austell, GA 30168-0000

RE:    Long Term Disability Benefits
       The Coca-Cola Company
       Claim #: 790865

Dear Ms. Everson:

We are writing to advise you that Dr. Washington did not provide medical documentation to alter the original decision made by independent medical examiner, Dr. D'Auria, Board Certified Orthopedic Surgeon. Therefore, we have maintained our original decision that you are no longer considered disabled from your own occupation per the Coca-Cola Company policy, based on a full, fair and thorough review of your claim. Please see our original letter enclosed.

In good faith, we reopened your claim (while the additional medical information was being reviewed), and issued benefit payment to you through March 3, 2005. Therefore, your written request for review must be sent within 180 days of the receipt of this letter, and state the reasons why you feel your claim should not have been denied. In your request for review, include documentation not already contained in your claim file such as test results, consultations, medical reports, diagnostic test results; any information which you feel will support your claim. You may request to review pertinent claim file documents upon which the denial of benefits was based. If Liberty Life does not receive your written request for review within 180 days of your receipt of this notice, our claim decision will be final, your file will remain closed, and no further review of your claim will be conducted. Under normal circumstances you will be notified of the final decision within 45 days of the date that our request is received. If there are special circumstances requiring delay, you will be notified of the final decision no later than 90 days after your request for review is received.

Nothing in this letter should be construed as a waiver of any Liberty Life Assurance Company of Boston rights and defenses under the above captioned policy, and all of these rights and defenses are reserved to the Company, whether or not they are specifically mentioned herein.

If you have any questions about this determination please call me.

EXHIBIT

H

LLCL0109



COCA-COLA PLAZA
ATLANTA, GEORGIA

ADDRESS REPLY TO
P. O. DRAWER 1734
ATLANTA, GA. 30301

404 676-2121

March 30, 2005

Ms. Jacqueline Everson
1530 Locust Log Way
Austell, GA  30168

Dear Jacqueline:

We have been informed that you are no longer eligible for Long-Term Disability benefits. There is currently no job available for you at The Coca-Cola Company. As a result, your employment with The Coca-Cola Company is being terminated effective March 30, 2005.

You will be receiving a separate communication from the Benefits Service Center regarding continuation of coverage for certain benefits.

Enclosed with this letter is a form required by law related to the termination of your employment.

If you have any questions, please contact Ceree Eberly, Human Resources Manager, at (404) 676-1579.

Sincerely,

Danny Balenger

Enclosure

┌──────────────┐
│   EXHIBIT    │
│              │
│      I       │
└──────────────┘



State of Georgia
Department of Labor

**SEPARATION NOTICE**

1. Employee's Name  Jacqueline Everson                2. S. S. No. ████████

   a. State any other name(s) under which employee worked. _____

3. Period of Last Employment: From  10/15/90                To  3/30/05

4. REASON FOR SEPARATION:

   a. LACK OF WORK ☐

   b. If for other than lack of work, state fully and clearly the circumstances of the separation: _____
      period of paid leave ended and no job available.
      _____

5. Employee received payment for: (Severance Pay, Separation Pay, Wages-In-Lieu of Notice, bonus, profit sharing, etc.)
   (DO NOT include vacation pay or earned wages)

   _____N/A_____ in the amount of $ _____ for period from _____ to _____
   (type of payment)

   Date above payment(s) was/will be issued to employee _____

   IF EMPLOYEE RETIRED, furnish amount of retirement pay and what percentage of contributions were paid by the employer.
   _____ per month _____ % of contributions paid by employer

6. Did this employee earn at least $3,500.00 in your employ?  YES ☑   NO ☐   If NO, how much? $_____

   Average Weekly Wage _____

| | |
|---|---|
| Employer's Name  The Coca-Cola Company<br><br>Address  One Coca-Cola Plaza, NW<br>　　　　　(Street or RFD)<br><br>City  Atlanta 　　State  GA 　 30313<br>　　　　　　　　　　　　　　　　ZIP Code<br><br>Employer's Telephone No. (404) 676-1579<br>　　　(Area Code) 　　　　　(Number) | Ga. D. O. L. Account Number  020-240-08<br>(Number shown on Employer's Quarterly Tax and Wage Report, Form DOL-4.)<br><br>I CERTIFY that the above worker has been separated from work and the information furnished hereon is true and correct. This report has been handed to or mailed to the worker.<br><br>_Danny Balenger_<br>Signature of Official, Employee of the Employer<br>or authorized agent for the employer<br><br>Financial Services Manager<br>Title of Person Signing<br><br>3/30/2005<br>Date Completed and Released to Employee |
| **NOTICE TO EMPLOYER**<br>At the time of separation, you are required by the Employment Security Law, OCGA Section 34-8-190(c), to provide the employee with this document, properly executed, giving the reasons for separation. If you subsequently receive a request for the same information on a DOL-1199FF, you may attach a copy of this form (DOL-800) as a part of your response. | |

**NOTICE TO EMPLOYEE**
OCGA SECTION 34-8-190(c) OF THE EMPLOYMENT SECURITY LAW REQUIRES THAT YOU TAKE THIS NOTICE TO THE GEORGIA DEPARTMENT OF LABOR FIELD SERVICE OFFICE IF YOU FILE A CLAIM FOR UNEMPLOYMENT INSURANCE BENEFITS.

SEE REVERSE SIDE FOR ADDITIONAL INFORMATION.

DOL-800 (R-8/02)

*The Coca-Cola Company*

January 26, 2004

Ms. Jacci Everson
1530 Locust Log Way
Austell, Georgia  30178

Dear Jacci:

In accordance with our Family Medical Leave Act (FMLA) Policy, an employee who is eligible for Family Medical Leave will receive up to 12 weeks of unpaid leave.  As of November 27, 2003, you exhausted your 12 weeks of FMLA leave.

The Company is no longer required to hold your position.  When you are released to return to work, or when your Short-Term Disability payments end, whichever comes first, you will have a 30 day period of unpaid leave.  The Company will make reasonable efforts during the 30 day period to assist you in finding another position in the Company if one is available.  If you do not find a position during that 30 day period, you will be separated from the Company. None of the preceding affects your ability to apply for Long-Term Disability benefits.

If you have any questions concerning this matter, please contact me or Ceree Eberly, Human Resources Director, at (404) 676-1579.

Sincerely,

Danny Balenger

cc:   Ceree Eberly
      Melva Williams
      Sekou Gary, Esq.

EXHIBIT

J

Coca-Cola 000549
EVERSON II

 Gmail                                                      Jacci Everson <jaccieverson@gmail.com>

## RE: Ongoing Discrimination (Administrative Errors and Multiple Classifications) - HLP-2023-712376 CRM:0671000003236

6 messages

**Coca-Cola Help** <x39129@coca-cola.com>                                 Fri, Jun 2, 2023 at 9:00 AM
To: Jacqueline Everson <jaccieverson@gmail.com>

Hello Jacqueline,
I hope this email finds you well.

 Please be advised that we sent your letter/ email to the legal team and the claims team for review. Since this is a legal process, we are not able to provide updates. The resolution is usually provided in a 90-day timeframe, but it depends on every case specifically. Once the claim is resolved, you will receive the resolution via regular mail.

Kind regards,

Priscila Murillo
HR Help Customer Care Specialist | The Coca-Cola Company
hrhelp@coca-cola.com

CONFIDENTIALITY NOTICE
NOTICE: This message is intended for the use of the individual or entity to which it is addressed and may contain information that is confidential, privileged and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, you are hereby notified that any printing, copying, dissemination, distribution, disclosure or forwarding of this communication is strictly prohibited. If you have received this communication in error, please contact the sender immediately and delete it from your system. Thank You.

**Coca-Cola Help** <x39129@coca-cola.com>                                 Mon, Jun 5, 2023 at 11:57 AM
To: Jacqueline Everson <jaccieverson@gmail.com>

Hello Jacqueline,

I hope this email finds you well.

I would like to confirm if you still need assistance with your open case. If so, would you be so kind to please advise what are your additional questions? Or let me know if your request has been already addressed to complete your case.

Kind regards,

Priscila Murillo
HR Help Customer Care Specialist | The Coca-Cola Company
hrhelp@coca-cola.com
[Quoted text hidden]
[Quoted text hidden]

**Coca-Cola Help** <x39129@coca-cola.com>                                 Tue, Jun 6, 2023 at 8:09 AM
To: Jacqueline Everson <jaccieverson@gmail.com>

EXHIBIT

K

Case 1:23-cv-02947-MLB Document 11-2 Filed 08/11/23 Page 15 of 41 1671000003236

Hello Jaqueline,

I hope this email finds you well.

We have attempted to contact you on via email.
[Quoted text hidden]
[Quoted text hidden]
[Quoted text hidden]

---

**Jacci Everson** <jaccieverson@gmail.com>                              Tue, Jun 6, 2023 at 4:17 PM
To: Coca-Cola Help <x39129@coca-cola.com>

Ms. Murillo,

On June 2, 2023 I received an email from you saying you sent my letter/email to the legal team and claims team for review.

No other communication has been sent to me.

Sincerely,

Jacqueline Everson

[Quoted text hidden]

---

**Jacci Everson** <jaccieverson@gmail.com>                              Tue, Jun 6, 2023 at 5:46 PM
To: Coca-Cola Help <x39129@coca-cola.com>

Ms. Murillo,

My case has not been resolved.

Sincerely,

Jacqueline Everson
[Quoted text hidden]

---

**Coca-Cola Help** <x39129@coca-cola.com>                              Wed, Jun 7, 2023 at 8:10 AM
To: Jacqueline Everson <jaccieverson@gmail.com>

Hello Jaqueline,

I hope this email finds you well.

We hope this email finds you well. We wanted to provide you with an update regarding the recent escalation of your case.

As we confirmed in our discussion on June 2, 2023, your letter/email has been forwarded to our legal team and claims department for review. Due to the nature of the legal process, we are unable to provide any updates at this time.

It is important to note that resolutions generally occur within a 90-day timeframe; however, this can vary depending on the specific details of each case. Once a resolution has been reached, you will receive a formal notification via regular mail.

As the case has been escalated and is now outside of our scope, we must close it on our end. Please be

assured that your claim is being handled by the appropriate team, and you will be informed of the outcome as soon as possible.

We just attempted to contact you to confirm if you have any other inquiries or requests. Thank you for your patience and understanding during this process.

Kind regards,

Priscila Murillo
HR Help Customer Care Specialist | The Coca-Cola Company
hrhelp@coca-cola.com
-------------------- Original Message --------------------
**From:** Jacqueline Everson <jaccieverson@gmail.com>;
**Received:** Tue Jun 06 2023 14:17:43 GMT-0600 (Central Standard Time)
**To:** Coca-Cola Help <x39129@coca-cola.com>; Coca-Cola Help <x39129@coca-cola.com>;
**Subject:** Re: Ongoing Discrimination (Administrative Errors and Multiple Classifications) - HLP-2023-712376
CRM:0671000003236

> **ATTENTION:** This email was sent from outside the company. Do not click links or open files unless you know it is safe. Forward malicious emails to phish@coca-cola.com.

[Quoted text hidden]
[Quoted text hidden]



**NORTHERN TRUST**

Please send all correspondence to:

THE COCA-COLA COMPANY
BENEFITS SERVICE CENTER
ONE COCA-COLA PLAZA
NAT LL1038
ATLANTA, GA  30313-2420
877-676-7656

On the reverse side of this document, you will find: Electronic Deposit Authorization, Address Correction Form, and Important Federal Tax Election Notice.

## EARNINGS STATEMENT
### THE COCA-COLA COMPANY

| Check Number | Payable Date | Reference Number | ID Number | Client / Plan |
|---|---|---|---|---|
| 0014667085 | 08-01-2023 | 000029928 | | 0053/CCT |



04GUENTH-0053/CCT-02-000029928-0014667085-000004091036
YMN 000310 MMC  0719 29S7BPZDWA-19 B:0 007403 000001 001/001 14807-14808
**JACQUELINE EVERSON**
**1530 LOCUST LOG WAY**
**AUSTELL GA 30168-5827**

| EARNINGS | THIS PERIOD | YEAR-TO-DATE |
|---|---|---|
| BENEFIT | $453.67 | $3,629.36 |
| **GROSS PAY** | **$453.67** | **$3,629.36** |

| DEDUCTIONS | THIS PERIOD | YEAR-TO-DATE |
|---|---|---|
| **TOTAL DEDUCTIONS** | **$0.00** | **$0.00** |
| **NET PAY** | **$453.67** | |

### IMPORTANT NOTES
Have you recently moved or is the address on file incorrect?  If so, please call The Coca-Cola Company at 1-877-676-7656 to have all of your records updated.

## WITHHOLDING ELECTIONS

**CURRENT FEDERAL WITHHOLDING ELECTIONS**
**No Withholding**
**CURRENT GA STATE WITHHOLDING ELECTIONS**
**No Withholding**

0053/CCT

Federal Tax Election Form *(Please complete only one of the following)*
1. ☐ I do not want Federal income tax withheld from my payment
2. ☐ I want to have Federal income tax withheld from my payment
   based on the elections I have indicated below:
☐ Single/Married Filing Sep. ☐ Married/Surviving Spouse ☐ Head of Househ[old]
Multiple Jobs/Pension Income_____ Claim Dependents_____
Other Income_____ Deductions_____ Extra Withholding_____
*Under penalties of perjury, I certify that I am entitled to the above elections.*
Requests for flat dollar amount withholding, or any election options that are not consistent with those which are stated on this form will not be processed.

**EXHIBIT**

**L**

GA State Tax Election Form *(Please complete only one of the following)*
1. ☐ I do not want State income tax withheld from my payment
2. ☐ I want to have State income tax withheld from my payment
   based on the elections I have indicated below:
☐ Single ☐ Married ☐ Head of Household   # of Exemptions_____
Additional Amount Withheld $_____

0053/CCT



Liberty Mutual Insurance Company

On May 1, 2017, the Company directly acquired 100% ownership and all of the issued and outstanding voting shares of Ironshore, Inc. ("Ironshore"), a holding company, which is the upstream parent of two property and casualty insurance companies and various subsidiaries that engage in insurance and non-insurance activity. Effective July 1, 2017, Ironshore Indemnity Inc. and Ironshore Specialty Insurance Company became members of the LMIC Pool.

On May 1, 2018, the Company sold Liberty Life Assurance Company of Boston, which provides group disability, group life, individual life and annuity products, to Lincoln Financial Group.

Capital Stock

The Company has authorized and outstanding 100,000 shares of common capital stock with a par value of $100.00 per share. All of the outstanding capital stock of the Company is owned by LMGI.

LMIC also has 100,000 shares of Series A Preferred Stock authorized, of which 7,468 shares were issued, outstanding and held by its parent, LMGI. All shares have a stated par value of $0.01.

Dividends to Stockholders

The following table illustrates ordinary dividends paid by the Company to its parent, LMGI, during the period covered by this examination:

| Stockholder Dividend | | |
|---|---|---|
| 2018 | $ | 64,766,000 |
| 2017 | | 69,727,700 |
| 2016 | | 67,859,641 |
| 2015 | | 64,766,000 |
| 2014 | | 64,766,000 |
| | $ | 331,885,341 |

Dividends to Policyholders

Certain insurance contracts, primarily workers compensation policies, are issued with dividend plans to be paid subject to approval by the Company's Board of Directors. Incurred policyholder dividends for the years 2014 through 2018 are shown in the following schedule:

| Policyholder Dividend | | |
|---|---|---|
| 2018 | $ | 8,220,582 |
| 2017 | | 6,796,773 |
| 2016 | | 8,884,883 |
| 2015 | | 9,677,688 |
| 2014 | | 11,783,650 |
| | $ | 45,363,576 |

5

EXHIBIT

M

# The Coca-Cola Company
## YOUR VESTED PENSION BENEFIT

## OTHER INFORMATION

Your name and Social Security number appear on a recent form 8955-SSA that the plan has filed or is filing.

The actual amount of your monthly pension benefit will be determined at your actual benefit commencement date.    Nothing in this estimate should be construed as an expressed or implied guarantee of future retirement benefits.

Based on the information listed in the Summary of Your Data section above, you are eligible to receive your monthly benefit from the Pension Plan anytime between September 1, 2013 and September 1, 2023. If you choose to commence your Pension Plan benefit prior to September 1, 2023, your benefit will be reduced according to the terms of the Pension Plan to reflect the longer payment period expected.

Any benefit election made is subject to change, at your request only, prior to the issuance of your first payment. The compensation amounts displayed above include only eligible Compensation as described in the Pension Plan Summary Plan Description (SPD) and may differ from W-2 earnings.

Our records indicate that you do not have a Qualified Domestic Relations Order (QDRO) on file with the benefits department (typically, this affects participants who have gone through a divorce). If you believe a QDRO does apply to your Pension Plan benefit, please contact the Merrill Lynch Retirement Service Center to provide information regarding the QDRO.

Our records indicate that you have no period of employment with Coca-Cola Enterprises Inc. (CCE) or any affiliated bottler. If you have been employed by CCE, compensation and service earned during that employment could potentially increase pension benefit amounts payable to you from The Coca-Cola Company. Please contact the Merrill Lynch Retirement Service Center to provide this information.

Our records indicate that you have been granted a disability leave of absence. If you have applied for Social Security Disability Benefits during this period and have not been approved, you may be eligible for additional benefits under the Pension Plan. In order to receive an additional benefit for this period, you must provide your denial letter from the Social Security Administration to the Merrill Lynch Retirement Service Center.

Our records indicate that you have taken Short Term Disability (STD) leave. Under the terms of the Pension Plan, upon return to active employment from STD leave, the period of the leave is included in benefit calculations. The pension benefit amounts shown in this material include service granted during that period. If you are currently on such a leave, your pension benefits will be adjusted upon your return to active employment.

Our records indicate that you do not have an Offset to your Pension Plan benefit on file with the benefits department.  Please refer to the 'Final Notes' section of this notice for more information.

You may contact the Merrill Lynch Retirement Service Center 180 days prior to the date you want payments to begin.  Your benefit will vary depending on the date you elect to begin receiving benefits. If you elect to delay the commencement of your Pension Plan benefits, you should contact the Merrill Lynch Retirement Service Center three to six months prior to the date you want payments to begin.  If we do not receive notice from you before that time, we will contact you three months prior to your Pension Plan Normal Retirement Date.  In either case, we will send you an updated Benefit Election Form describing your options. It is very important that you notify the Service Center of any change in your address and/or telephone number so that we can continue to provide you with pension plan information regularly.

**RETAIN THIS PAGE FOR YOUR RECORDS**

Jacqueline Everson                                February 14, 2013

EXHIBIT

N

5

2022    Internal Revenue Service

# Instructions for Form 8955-SSA

## Annual Registration Statement Identifying Separated Participants With Deferred Vested Benefits

Section references are to the Internal Revenue Code, unless otherwise noted. ERISA refers to the Employee Retirement Income Security Act of 1974.

**Future developments.** For the latest information about developments related to Form 8955-SSA and its instructions, such as legislation enacted after they were published, go to *IRS.gov/Form8955SSA*.

## Purpose of Form

Form 8955-SSA, the designated successor to Schedule SSA (Form 5500), is used to satisfy the reporting requirements of section 6057(a). Form 8955-SSA is a stand-alone reporting form filed with the IRS. See *Where To File*. **DO NOT file Form 8955-SSA with Form 5500**, Annual Return/Report of Employee Benefit Plan, or **Form 5500-SF**, Short Form Annual Return/Report of Small Employee Benefit Plan.

Use Form 8955-SSA to report information relating to each participant who separated from service covered by the plan and is entitled to a deferred vested benefit under the plan but is not paid this retirement benefit. The plan administrator of each plan subject to the vesting requirements must file Form 8955-SSA for participants who have a deferred vested benefit under the plan and:

• Separated from service covered by the plan, but vested retirement benefits are not paid and were not previously reported (using Entry Code A in Part III, line 9, column (a));
• Were previously reported under the plan but whose information is being corrected (using Entry Code B in Part III, line 9, column (a));
• Were previously reported as deferred vested participants on another plan's filing if their benefits were transferred (other than in a rollover) to the plan of a new employer during the covered period (using Entry Code C in Part III, line 9, column (a); or
• Were previously reported under the plan but have been paid out or are no longer entitled to those deferred vested benefits (using Entry Code D in Part III, line 9, column (a)).

For more information on required participant information, see the instructions for Part III.

The information reported on Forms 8955-SSA is generally given to the Social Security Administration (SSA). The SSA provides the reported information to separated participants when they file for social security benefits.

**Note.** The SSA no longer processes nonstandard pages 2. Report information about separated participants only on page 2 of Form 8955-SSA. If additional space is needed for separated participants, use additional pages 2 only. Do not add another page 1 of Form 8955-SSA, spreadsheets, or other nonstandard formats.

A Form 8955-SSA need not be filed for a year if no information is required to be provided for that year by these instructions.

Form 8955-SSA may be filed electronically through the FIRE system or on paper. The IRS and the SSA encourage all filers to file Form 8955-SSA electronically. Filing electronically saves time and effort and helps ensure accuracy. Certain filers, however, are required to file the 2022 Form 8955-SSA electronically. For more information, see *How To File*.

**Reporting requirement.** Under section 6057(b), plan administrators must notify the Secretary of the Treasury of certain changes to the plan and the plan administrator. These changes are reported on the plan's Form 5500 return/report. Plan administrators should report these changes on the Form 5500 return/report for the plan year in which the change occurs as indicated in the Form 5500 instructions.

## Telephone Assistance

If you have questions and need assistance completing this form, call the IRS Help Line at 877-829-5500 and follow the directions as prompted. This toll-free telephone service is available Monday through Friday.

## How To Get Forms and Publications

**Internet.** You can access the IRS website 24 hours a day, 7 days a week at IRS.gov to:
• Download forms, instructions, and publications;
• Order IRS products online;
• Research your tax questions online;
• Search publications online by topic or keyword; and
• Sign up to receive local and national tax news by email.

You can find forms, instructions, and publications by visiting the IRS website at *IRS.gov/FormsPubs* or *IRS.gov/OrderForms*.

## Photographs of Missing Children

The Internal Revenue Service is a proud partner with the *National Center for Missing & Exploited Children® (NCMEC)*. Photographs of missing children selected by the Center may appear in instructions on pages that would otherwise be blank. You can help bring these children home by looking at the photographs and calling 1-800-THE-LOST (1-800-843-5678) if you recognize a child.

## General Instructions

### Who Must File

Plan administrators of plans subject to the vesting standards of section 203 of ERISA must file Form 8955-SSA. For example, the plan administrator of a section 403(b) plan that _____ the vesting standards of section 203 of ERISA

EXHIBIT

O

for a plan to which more than one employer contributes, at the time the participant incurs the second consecutive 1-year break in service under the plan).

## Type of Annuity Code

**A** A single sum
**B** Annuity payable over fixed number of years
**C** Life annuity
**D** Life annuity with period certain
**E** Cash refund life annuity
**F** Modified cash refund life annuity
**G** Joint and last survivor life annuity
**M** Other

**Line 9, column (e).** From the following list, select the code that describes the benefit payment frequency during a 12-month period.

## Type of Payment Code

**A** Lump sum
**B** Annually
**C** Semiannually
**D** Quarterly
**E** Monthly
**M** Other

**Line 9, column (f).** For a defined benefit plan, enter the amount (in whole dollars) of the periodic payment that a participant is entitled to receive.

In general, a deferred vested benefit under a defined benefit plan would be reported under line 9, column (f), as the periodic payment that the participant is entitled to receive. The plan administrator may, however, report a different form of benefit if the plan administrator considers it more appropriate. For example, the plan administrator of a cash balance plan may report a participant's benefit as the participant's hypothetical account balance. In that case, the plan administrator may enter Code A (a single sum) in column (d) and Code A (a lump sum) in column (e).

For a multiemployer plan, if the amount of the periodic payment cannot be accurately determined because the plan administrator does not maintain complete records of covered service, enter an estimated amount.

**Line 9, column (g).** For defined contribution plans, enter the value (in whole dollars) of the participant's account.

**Line 9, columns (h) and (i).** Show the EIN and plan number of the plan under which the participant was previously reported.

**Privacy Act and Paperwork Reduction Act Notice.** We ask for the information on this form to carry out the Internal Revenue laws of the United States. Sections 6057 and 6109 require you to provide the information requested on this form. We need it to determine whether the plan properly accounts for the deferred vested retirement benefits of separated participants. Failure to provide this information, or providing false or fraudulent information, may subject you to penalties.

You are not required to provide the information requested on a form that is subject to the Paperwork Reduction Act unless the form displays a valid OMB control number. Books or records relating to a form or its instructions must be retained as long as their contents may become material in the administration of any Internal Revenue law. Generally, tax returns and return information are confidential, as required by section 6103.

However, section 6103 authorizes disclosure of the information to others. Pursuant to section 6057(d), we will disclose this information to the Social Security Administration for use in administering the Social Security Act. This information may also be disclosed to the Department of Justice for civil or criminal litigation, to the Department of Labor or the Pension Benefit Guarantee Corporation for use in administering ERISA, and to cities, states, the District of Columbia, and U.S. commonwealths and possessions for use in administering their tax laws. It may also be disclosed to other countries under a tax treaty, to federal and state agencies to enforce federal nontax criminal laws, or to federal law enforcement and intelligence agencies to combat terrorism.

The time needed to complete and file this form will vary depending on individual circumstances. The estimated average time is 49 minutes.

If you have suggestions for making this form simpler, we would be happy to hear from you. You can send us comments from *IRS.gov/FormComments*. Or you can write to the Internal Revenue Service, Tax Forms and Publications Division, 1111 Constitution Ave. NW, IR-6526, Washington, DC 20224. Do not send Form 8955-SSA to this address. Instead, see *Where To File*, earlier.

# Long Term Disability Summary Plan Description

*The Coca-Cola Company*

EXHIBIT

P

# Table of Contents

| | Page |
|---|---|
| Introduction | 1 |
| | |
| **Plan Participation and Cost** | 2 |
| Eligibility | 2 |
| When coverage begins | 2 |
| Your cost of coverage | 2 |
| | |
| **Long Term Disability Benefits** | 3 |
| Your LTD benefit | 3 |
| Other sources of disability benefits | 3 |
| LTD payment example | 4 |
| Other examples of disability income | 4 |
| A note on Social Security benefits | 5 |
| Adjustment of benefits | 5 |
| | |
| **When Long Term Disability Benefits Are Paid** | 6 |
| When benefits are paid | 6 |
| Definition of total disability | 6 |
| Rehabilitative employment | 6 |
| Partial disability | 6 |
| When benefits stop | 7 |
| If your disability recurs | 7 |
| When benefits are not paid | 8 |
| | |
| **Applying for LTD Benefits** | 9 |
| How to apply for LTD benefits | 9 |
| If a claim for benefits is denied | 9 |
| | |
| **When Coverage Ends** | 10 |
| | |
| **Tax Considerations** | 11 |
| Paying taxes on your benefits | 11 |
| | |
| **Situations Affecting Your Plan Benefits** | 12 |
| Summary of some situations | 12 |
| If you're asked to get an impartial medical opinion | 12 |
| If your LTD benefit is overpaid | 12 |
| Retroactive awards | 12 |
| Implied promises | 13 |
| If the plan is ended or modified | 13 |
| | |
| Glossary | 14 |

7-29-01

# Introduction

This is the Summary Plan Description of the Long Term Disability Plan of The Coca-Cola Company. It describes benefits in effect for employees of the Company or an Associated Company.

The Long Term Disability Plan begins paying when you have been absent from work for at least six months as a result of an illness or injury.

Nothing in this summary says or implies that participation in the included plan or program is a guarantee of continued employment with the Company. Nor is it a guarantee that benefit levels will remain unchanged in future years. The Company reserves the right to end, suspend or amend this plan or program at any time, in whole or in part. The plan provisions in this summary are not intended to apply to employees covered by a collective bargaining agreement unless agreed to by the Company and the collective bargaining representative.

While this summary describes the principal provisions of the plan, the administration of the plan is subject to the actual terms and provisions of the plan as set forth in the plan document. This description is intended only to help you understand the plan, and can in no way be considered to modify the actual terms of the plan document. If there is a conflict between the content of this summary and the official plan document, the plan document always governs.

The Administrative Information document describes your legal rights and provides legal and technical information about the plans. Please review this information carefully. It is an integral part of each of the Summary Plan Descriptions.

This summary is intended for use by and applies only to employees of the Company or an Associated Company. An individual will be treated as an "employee" for purposes of this plan summary only if he or she is actually classified as an employee by the Company or an Associated Company on its payroll, personnel and benefits system, and is paid for services rendered through the Company's or an Associated Company's payroll system, as distinguished from its accounts payable department. No other individual will be treated as an employee for purposes of this plan summary.

1

7-29-01

# Plan Participation
# and Cost

*If you're a regular employee of the Company, your LTD coverage starts on your first day of employment.*

## Eligibility

You're eligible for coverage under the plan if you're

- a regular (actively at work) employee of **The Coca-Cola Company** or one of its Associated Company(ies), or

- an **international service employee** of the **Company**, who has been determined to be eligible under the plan

You're not eligible for coverage under the plan if you're an intern, temporary, seasonal employee, co-op, leased employee, as defined by your employer, or you are an employee who is scheduled to work less than 17½ hours per week, or if you are covered by other group LTD plans to which the Company contributes.

If you're an employee represented by a bargaining agent, you may not participate in this plan unless participation has been agreed upon by both your bargaining agent and the Company.

## When coverage begins

If you're a regular employee of the Company, your coverage starts the first day of employment.

If you're an eligible international service employee not already covered as a regular employee, your coverage starts on the first day of employment as an international service employee.

If you're on an authorized leave of absence on the day your coverage is scheduled to start, your coverage will be effective after you complete seven consecutive full scheduled working days.

## Your cost of coverage

The Company currently pays the full cost of your LTD plan coverage.

2

7-29-01

# Long Term
# Disability Benefits

*Long term disability benefits work with benefits from other sources to replace a percentage of your pay while you're disabled.*

### Your LTD benefit

If you become totally disabled while covered under the plan, your LTD plan pays a benefit of 60% of your **basic monthly earnings**. If, however, you are entitled to receive benefits during your disability from certain other sources, as defined below, your LTD plan benefit will be reduced so that, when combined with these other sources, the total benefit will not exceed 70% of your basic monthly earnings.

For purposes of the plan, "basic monthly earnings" means an average of your basic pay for the 12 consecutive months preceding the date your **total disability** begins, not including overtime, incentive pay, bonuses and other special pay, but including commissions.

In accordance with federal tax law, any compensation in excess of $170,000 per year (for 2001, indexed annually for inflation) is not recognized as eligible compensation for determining long term disability for benefits.

### Other sources of disability benefits

Your LTD plan is one of several sources that could pay benefits when you're disabled. The plan is designed to work with these other sources to replace a percentage of the pay you were earning before becoming disabled.  Other sources of disability benefits include:

- benefits payable from any government entity, such as workers' compensation, occupational disease or other disability legislation
- Social Security disability or retirement benefits received by you
- benefits payable from government plans
- benefits payable under any automobile reparations act or program of any government
- benefits payable under the Railroad Retirement Act
- retirement benefits actually received under a Company-sponsored retirement plan
- any other compensation received from the Company, except from **rehabilitative employment** as described on page 6 of this plan summary; and
- benefits received under any other disability plan to which the Company contributes, except as excluded below.

3

7-29-01

Other sources of benefits do not include:

- payments received under personal policies you may have purchased,
- benefits accrued under a Company-sponsored retirement plan, unless you're actually receiving them.
- disability income from either the Company's business travel accident insurance plan or the accidental death and dismemberment insurance plan,
- Social Security benefits payable to your dependents, or
- benefits received under supplemental income plans provided by the Company.

Your benefit will not be reduced by cost-of-living or other increases in benefits that take effect after you begin receiving an LTD plan benefit.

## LTD payment example

Suppose your basic monthly pay for disability purposes is $3,000 and you do not receive benefits from other sources.  Here's how your LTD payment is figured:

| | |
|---|---|
| $3,000 | Basic monthly pay before disability |
| x  60% | Maximum LTD pay replacement percentage |
| $1,800 | Maximum monthly benefit from the LTD plan |

If you begin receiving $750 in monthly Social Security disability payments, your LTD benefit will be reduced as follows:

| | |
|---|---|
| $3,000 | Basic monthly pay before disability |
| x  70% | Maximum pay replacement percentage from all sources |
| $2,100 | Total amount of your pay to be replaced by all sources |
| -  750 | Monthly Social Security disability payment |
| $1,350 | ACTUAL MONTHLY BENEFIT FROM THE LTD PLAN |

As the above example shows, the LTD plan works with Social Security disability payments to bring your monthly income to 70% of your basic monthly pay.

## Other examples of disability income

Here are some additional examples of how much the LTD plan could pay in the event of a total disability, using basic monthly earnings amounts of $2,000, $3,000 and $4,000.

| Basic Monthly Earnings | Maximum LTD Benefit | Maximum Benefit All Sources |
|---|---|---|
| $2,000 | $1,200 | $1,400 |
| $3,000 | $1,800 | $2,100 |
| $4,000 | $2,400 | $2,800 |

Since the LTD plan benefit combined with other sources of LTD benefits cannot exceed 70% of your basic monthly earnings, the LTD plan benefit would be reduced as necessary.

4

7-29-01

## A note on Social Security benefits

Your eligibility for Social Security disability benefits depends on your illness or injury. In general, these benefits start after you have been totally disabled for six consecutive calendar months. If you think your disability will extend beyond five months, it is important for you to contact your local Social Security Administration office and apply for Social Security benefits.

As long as you may be eligible for Social Security benefits, the **claims administrator** will estimate your Social Security income and deduct that amount from your LTD benefits until all appeal procedures have been exhausted. Therefore, if the Social Security Administration denies your request for benefits, you must appeal the denial. The LTD plan will reimburse you for the travel, medical and legal expenses involved in your appeal. You will need to provide the claims administrator with a copy of the Social Security determination indicating whether or not you're entitled to receive Social Security disability benefits. If you are denied benefits, the claims administrator will return the deducted amounts to you.

## Adjustment of benefits

Your LTD benefit will not be affected by any legislated increases in the Social Security benefits you receive after benefits are initially determined.

If your LTD plan benefits are overpaid for any reason, you will be required to reimburse the claims administrator for the overpayment. If your LTD plan benefits are underpaid, your next monthly LTD plan payment will be adjusted to include the underpayment. Therefore, it's important that you let the claims administrator know if there is any change in your disability income from other sources.

7-29-01

# When Long Term
# Disability Benefits Are Paid

*LTD benefits can start after you have been disabled for six months.*

### When benefits are paid

If you are entitled to coverage under the plan, long term disability benefits can begin after you have been totally disabled for six consecutive months.

Before LTD payments can start, your disability must be medically verified. This may mean a **doctor** approved by the claims administrator certifies that you're totally disabled due to a physical or mental infirmity.

### Definition of total disability

Benefits are paid for any physical or mental illness or injury that causes total disability. The plan defines "total disability" in this way:

- During the first 24 months of your disability, you must:
  - -- be continuously unable to perform the normal duties of your regular occupation, and
  - -- not be gainfully employed in any other occupation or employment for wage or profit
- After the first 24 months, you must be continuously unable to perform any other work for which you reasonably qualify by education, training or experience.

### Rehabilitative employment

If you're able, you may participate in an approved rehabilitation program while recovering from your disability. Even if you're paid for your work under this program, you still may be able to receive LTD benefits. Your participation in the program must be approved by the claims administrator before it is considered rehabilitative employment.

The plan will reduce your monthly LTD benefit by 50% of the income received during rehabilitative employment.

See the "Glossary" on page 14 for additional information on rehabilitative employment.

### Partial disability

Under certain circumstances, the LTD claims administrator may suggest that you can return to work on a partial (or part-time) basis.  If your department can accommodate a return to work in this manner, you may receive pay for your time at work as well as LTD benefits.

Your benefit, under this scenario, may exceed the 70% maximum from all sources.

6

7-29-01

## When benefits stop

Benefits automatically will stop in the following circumstances:

- **You're no longer disabled.** Plan benefits will end if you're able to perform your own job within the first 24 months of your disability. After the first 24 months, benefits will end if you're able to perform any job for which you're reasonably qualified by education, training or experience.

- **You reach the maximum benefit duration.** Depending on your age at the time of disability, LTD benefits will end according to the table below:

| Age When Disability Occurs | Benefit Duration |
|---|---|
| 60 or younger | To age 65* |
| 61-64 | 5 years (60 months) |
| 65-68 | To age 70* |
| 69 or older | 1 year (12 months) |

   \* End of month in which you reach stated age.

- **You die.** LTD benefits stop on the date of your death.

- **The income you receive from other sources reaches or exceeds 70% of your basic monthly earnings.** If the income you receive from Social Security, workers' compensation, state disability benefits, a Company-sponsored retirement or disability plan, or other sources of disability benefits is equal to or more than 70% of your basic monthly earnings, payments from the LTD plan will end.

- **Your disability is subject to certain limitations.** If you're disabled due to mental or emotional illness, drug addiction or alcoholism, LTD plan benefits are payable for a maximum of 24 months. However, if you're an inpatient in a **hospital or other institution** receiving treatment for the condition at the end of the 24-month period, LTD payments will continue while you're hospitalized and for 90 days after you leave the hospital, provided you were confined for at least 14 days.

## If your disability recurs

If you recover from your disability, return to work and the same disability recurs within three months, LTD benefits begin immediately. You will not have to wait six months for benefits to begin the second time.

7-29-01

**When benefits are not paid**

Although the plan pays benefits for most disabilities, benefits won't be paid for disabilities resulting from:

- intentionally self-inflicted injuries, suicide or any attempt, while sane or insane
- war, or any act of war, whether declared or undeclared
- service in the military, naval or air service of any country
- your act of aggression, participation in a felony or attempted felony, illegal use of drugs, or any other illegal activity
- a condition for which you're not treated by a licensed doctor
- employment with someone other than the Company for which pay is received, or
- any pre-existing condition for which treatment was received or prescribed medicine was taken during the three-month period just before your LTD coverage starts. However, if you complete a consecutive twelve-month period of employment with the Company or any affiliate without missing work due to this condition, this restriction will be waived.

8

7-29-01

# Applying for
# LTD Benefits

*You must apply to receive LTD benefits.*

## How to apply for LTD benefits

After you first become totally disabled, or as soon thereafter as is reasonably possible, you must file a claim for LTD benefits. You must submit medical proof of the disability before benefits start and again from time to time, as requested, as proof of your continuing disability.

In addition, you must let the claims administrator know if you have been approved for Social Security disability benefits, workers' compensation, occupational disease awards or any other benefits described on page 3, in the section "Other sources of disability benefits."

## If a claim for benefits is denied

If a claim for benefits is denied in whole or in part, you're entitled to a full review. For more information on reviews of denied claims, refer to your Administrative Information document.

9

7-29-01

# When
# Coverage Ends

**Coverage ends if you leave the Company for reasons other than retirement.**

Your LTD coverage generally ends on the day of the month in which:

- you begin a leave of absence or layoff, unless you were disabled prior to the event
- you leave employment with the Company for any reason, unless you were totally disabled prior to the event
- you are no longer eligible for the plan
- you retire, or
- the plan is terminated or amended to terminate coverage for employees similarly situated

Unlike life insurance, your LTD insurance coverage cannot be converted to an individual policy when you leave.

7-29-01

# Tax
# Considerations

*Your disability income is taxable income to you.*

## Paying taxes on your benefits

All benefits you receive through the program are taxable income. Unless you request otherwise, taxes will be withheld from your monthly payments. You may still need to pay taxes on LTD benefits at the end of the year when you file your income tax returns.

**11**

7-29-01

# Situations Affecting
# Your Plan Benefits

*Some situations could cause a loss or delay of your LTD plan benefits.*

## Summary of some situations

Some situations that could affect benefits payable under the LTD plan, are summarized here.

- If you don't apply for benefits or provide the necessary information on the claim form, benefits may be delayed until you do.
- If your address changes while you're receiving benefits and you have not notified The Coca-Cola Company Benefits Service Center, benefits could be delayed.
- If you refuse to submit to a medical examination or to provide medical information required by the claims administrator, benefits could stop.
- If you don't let the claims administrator know whether you were approved or disapproved for Social Security benefits, plan benefits could be delayed.
- If your disability ends, payments stop.
- If you leave the Company for any reason other than disability, or if you're no longer a member of the eligible employee group, your coverage ends.

## If you're asked to get an impartial medical opinion

You may be asked to be examined by an impartial doctor or clinic at the plan's expense. This may be done in a disputed disability case to verify your disability. The result of the opinion is binding on the plan, the claims administrator and on you.

If you're asked to get this opinion, you will be notified by mail of the date, time and place. If you don't submit to the examination, your disability benefits will stop.

## If your LTD benefit is overpaid

If your LTD benefit is overpaid any month for any reason, the claims administrator has the right to deduct the overpaid amount from future payments. If the overpayment is greater than your monthly benefit, or if your LTD benefits end before the overpaid amount is recovered, you will be billed for the remainder, and your payment will be due immediately.

## Retroactive awards

If any other benefits coordinated with LTD benefits are awarded retroactively, they will be treated as having been received by you during the entire time period for which such benefits were payable and any overpayment of any program benefits will be calculated accordingly.

12

7-29-01

### Implied promises

Nothing in this booklet says or implies that participation in the plan is a guarantee of continued employment with the Company. Nor is it a guarantee that benefit levels or contribution rates for employees will remain unchanged in future years.

### If the plan is ended or modified

The LTD plan may be terminated, suspended or amended, in whole or in part (including, without limitation, any amendment that may reduce or eliminate coverage for one or more groups of covered individuals or institute or increase contribution rates) at any time and from time to time, by written document executed by the **LTD Plan Committee**. The written document will be made a permanent record of the plan.

Should the plan ever be terminated, suspended or modified, benefits for losses incurred before the change would be paid under the plan's former conditions.

7-29-01

RESURGENS OF EAST-WEST

PATIENT NAME:        EVERSON, JACQUELINE
DOB:                 08-07-1958
ACCT. NUMBER:        83229
DATE OF SERVICE:     09-10-2003
REF. PHYSICIAN:

MRI OF THE CERVICAL SPINE

HISTORY:  No history of trauma.  Neck stiffness for two months. Complaining of right shoulder numbness and left hand tingling.

TECHNIQUE:  Standard MR sequences were performed.  No IV contrast administered.

FINDINGS:  Technically compromised axial gradient echo sequences due to patient motion artifact.

Normal alignment of the cervical vertebrae demonstrating normal marrow signal.  Mid and lower cervical spondylosis noted with marginal osteophytosis and some reduction in the heights of the intervertebral disc spaces from C3 down to C7.  Normal appearance of the visualized portions of the cerebellar tonsils.

At C4-5 level, there are prominent right posterolateral osteophytes causing some neural foraminal stenosis likely impinging upon the exiting nerve roots (axial T2 image 7 and sagittal T1 image 9).  Associated prominent right focal posterolateral disc herniation noted seen causing effacement of the corresponding portion of the thecal sac with likely indentation of the central nerve root along with mild flattening of the anterior lateral aspect of the cord, which demonstrates some increased T2 signal consistent with myelomalacia (axial T2 image 8, sagittal T1 image 8).  Similar yet smaller left posterolateral focal disc protrusion also noted likely causing mass effect and indentation upon the left corresponding central nerve root (axial T2 image 8).  Patent left neural foramen.

At C5-6 level, there are moderate bilateral posterolateral osteophytes seen encroaching upon the corresponding neural foramina causing some foraminal stenosis likely impinging upon the exiting nerve roots bilaterally (axial T2 image 11).  Moderate associated broad based circumferential disc bulge noted abutting the central nerve roots bilaterally without however, focal disc herniation.

At C6-7 level, there is mild broad based circumferential disc bulge without focal disc herniation.  Patent neural foramina bilaterally.

Normal C2-3, C3-4, and C7-T1 interspaces.

Continued....



EXHIBIT

Q

LLCL0359

RESURGENS OF EAST-WEST

PATIENT NAME:          EVERSON, JACQUELINE
DOB:                   08-07-1958
ACCT. NUMBER:          83229
DATE OF SERVICE:       09-10-2003
REF. PHYSICIAN:

MRI OF THE CERVICAL SPINE

Continuance....

IMPRESSION:

1. C4-5 RIGHT POSTEROLATERAL FOCAL DISC HERNIATION EXERTING A MASS EFFECT UPON THE CORRESPONDING RIGHT CENTRAL NERVE ROOT. FOCAL C4-5 LEFT POSTEROLATERAL SIMILAR YET SMALLER DISC PROTRUSION ALSO SEEN EXERTING SOME MASS EFFECT UPON THE CORRESPONDING LEFT CENTRAL NERVE ROOT. PROMINENT RIGHT POSTEROLATERAL OSTEOPHYTE CAUSING CORRESPONDING NEURAL FORAMINAL STENOSIS LIKELY IMPINGING UPON THE EXITING RIGHT NERVE ROOT.

2. C5-6 BILATERAL POSTEROLATERAL OSTEOPHYTES WITH CORRESPONDING NEURAL FORAMINAL STENOSIS LIKELY IMPINGING UPON THE EXITING NERVE ROOTS. MODERATE ASSOCIATED BROAD BASED CIRCUMFERENTIAL DISC BULGE NOTED WITHOUT FOCAL DISC HERNIATION.

3. C6-7 MILD BROAD BASED DISC BULGE WITHOUT FOCAL DISC HERNIATION.

SOHEIL HANNA, M.D.          SH/lfb/NF2
Orthopaedic Radiologist

LLCL0360

NOV.19.2024    3:40PM                                    NO.599    P.1/2



Atlanta Neuromuscular
Diagnostics, LLC.

Jacqueline M. Washington M.D., F.A.A.N.          Office: 404.586.0442
650 Peachtree Street                             Facsimile: 404.586.0520
Suite 1675
Atlanta, GA  30308

Name:    Jacqueline Everson

| | |
|---|---|
| Patient ID: | 775-2004 |
| Gender: | Female |
| Date of Birth: | 08-07-58 |
| Date of Study | 11-18-04 |

Referring Physician:    Steven Stewart, M.D.
Examining Physician:    Jacqueline M. Washington  M.D.

Patient History:  This patient has a chief complaint of numbness and pain of both hands.  The problem began more than a year ago.  The problem is associated with neck pain.  The pain shoots into the arms.  At times she has numbness of the whole left arm but has more pain of the right upper extremity. .  She has a feeling of coldness. She has weakness of the hands and upper arms.

The examination is remarkable for increased upper extremity reflexes, pectoralis major, infraspinatus, right biceps lumbrical and triceps weakness is observed.
There is atrophy of the right biceps and deltoid.

Summary:
Nerve conduction studies of the right and left median motor and palmar pathways are normal.  Studies of the right and left ulnar motor and palmar pathways are normal.

Electromyography was remarkable for evidence of spontaneous activity and chronic denervation/reinnervation noted in the left deltoid, biceps and infraspinatus.  Spontaneous activity was seen in upper and middle cervical paraspinal muscles bilaterally.

Interpretation:

This is an abnormal study.  The electrodiagnostic evidence is consistent with bilateral upper and mid cervical radiculopathies.  The findings are severe and consistent with both ongoing active as well as chronic denervation. Diagnostic considerations include cervical spondylosis and multilevel disc disease.

Jacqueline M. Washington, M.D.

11/19

· *not discussed*
*confirmed by*
*Emily Flick*

Page 1

EXHIBIT

R

LLCL0178



**Atlanta Neuromuscular Diagnostics, LLC.**

**Jacqueline M. Washington M.D., F.A.A.N.**
550 Peachtree Street
Suite 1575
Atlanta, GA  30308

Office:       404.586.0442
Facsimile:    404.586.0520

## RETURN PATIENT VISIT

Referring Physician:   Steven Stewart M.D.
                       1900 Rockbridge Road
                       Stone Mountain GA 30087

Patient name:       **Jacqueline Everson**
Date of visit:      **12-21-04**
Patient number:     **1898**
Date of birth:      **08-07-58**

Dear Dr. Stewart:

I saw your patient Ms. Everson in follow-up. As you recall, she is a 46-year-old right-handed female with cervical spondylosis. I saw her initially for electrodiagnostic studies. She had a chief complaint of numbness and pain of both upper extremities. The symptoms were associated with neck pain and had onset approximately one year ago. She had complaints of weakness of both hands and upper arms.

**Medications**
Vicodin
Sulindac
Flexeril 10mg twice daily

**Neurological Examination**
The examination is remarkable for increased upper extremity reflexes
The motor examination is remarkable for 4/5 weakness of the right biceps, infraspinatus, pectoralis major, and lumbrical.

The examination is also remarkable for increased pinprick sensation of the C5-6 dermatome.

Review of records: MR of the cervical spin dated 09-10-2003 demonstrates evidence of focal disc compression with mass effect upon the right central C5 root with evidence of flattening of the anterior spinal cord.

LLCL0036

EXHIBIT
S

**Impression and Recommendations**
Cervical myeloradiculopathy, the patient continues to be symptomatic with evidence of upper motor neuron and lower motor neuron weakness.

**Plan**
Surgical consultation is likely to be required
Continue conservative management until then

If you wish to discuss the information presented above, please do not hesitate to contact me at 404.586.0442.

Sincerely,

Jacqueline M. Washington, M.D.

LLCL0037